## SETH SPRING *versus* SYLVANUS LOWELL, in Error.

In a process under the statute against the proprietor of a mill to recover damages for flowing lands, it must appear by the record that the jury were sworn as the law prescribes.

THIS was a writ of error brought upon a judgment of [ * 423 ] the Court of Common Pleas in this *county, rendered on the verdict of a jury upon the complaint of *Lowell* for damages done by flowing his land. The substance of the record of the Court of Common Pleas is as follows, *viz.*:—

" *Sylvanus Lowell* complains of *Seth Spring*, for that he, the said *Lowell*, is the owner, and seised of a certain tract of land in *Biddeford*, (describing it,) and that the said *Spring*, on the first day of September, 1794, built a certain mill-dam across *Saco River*, (on which the premises bounded,) to raise a head of water sufficient to work a certain *saw-mill* standing on the land of said *Spring*, and by so doing, he raised the water of said river to the height of four

feet, and caused it to flow over a large part of the said farm of said *Lowell*, and essentially to injure it, and in many parts totally to ruin it; and also to destroy entirely an excellent spring of cold water; and though the complainant has received satisfaction (as the same has been adjudged to him) to the 10th day of April, 1800; and though a jury have viewed the lands and returned their verdict as to the sum the said *Lowell* was, in their opinion, entitled to receive as compensation for said flowing—yet the complainant is dissatisfied with said verdict and appraisement; wherefore, for an increase of such yearly compensation, he prays, that the sheriff of said county may be directed to empannel another jury to appraise the said yearly damage occasioned by said dam and flowing, and the continuance of the same." The complaint was entered October term, 1801; when it appeared that *Spring* was notified of the same; thence continued to April term, 1802, when *Spring* did not appear, but made default: a warrant was then granted, at the prayer of the complainant, as the law directs; and the complaint continued, from term to term, to August term, 1803, to receive the return of the sheriff. The warrant directed the sheriff to summon and *empannel a jury of twelve good and lawful [ * 424 ] men of said county, which jury were to be sworn to make a true and faithful appraisement of the yearly damage done to the complainant, and how far the same is necessary, and what proportion of the year the said lands ought not to be flowed, and when public convenience and the circumstances of the case do not justify such flowing; and whether the yearly damages assessed by a former jury ought to be increased, and if any, how much; which jury were to try the cause and make return of their verdict therein. At August term, 1803, the sheriff returned, that on the 22d June, 1803, pursuant to his precept, he had notified the parties, and had summoned a jury of twelve good and lawful men, who had been sworn, which jury he had conducted on the premises mentioned in the complaint, who heard the parties and their evidence, and that he had kept the jury by themselves until they had agreed and sealed up their verdict, which he returned with his precept into court. The verdict was, " that after carefully viewing the premises mentioned in the complaint, and diligently attending to the evidence produced by the parties, the jury found *Spring* guilty of flowing a part of the land described in the complaint, and appraised the damage, for the injury done, at forty dollars each and every year since the 10th day of April, 1800, up to which time the complainant had received damage as awarded by a former jury, as appeared by the warrant; and further that the public convenience and the circumstances of the case do not justify such flowing from the 20th

27 * 317

day of April to the 20th day of November in each year." And the complainant, by his attorney, in court, before the allowance of the verdict, remitted to *Spring* all that part of the damage appraised
[ * 425 ] and estimated, which the jury allowed as compensation for said flowing from * the said 10th day of April, 1800, to the 10th day of October, 1801, [the time the present complaint was filed in court,] and consenting to take judgment on the verdict, claiming damages as therein appraised and estimated, and at the rate aforesaid, from the said 10th day of October, as mentioned in the verdict, and onward ; *Spring* moved in arrest of judgment ; [*see afterwards ;*] the motion was overruled, and judgment rendered that the return of the sheriff, together with the verdict of the jury, be allowed and recorded ; and thereupon ordered that the said sum of forty dollars be considered as the measure of the yearly damages to the complainant ; and that he recover costs, &c.

The errors assigned, being, *substantially,* what were alleged as reasons for arresting judgment, were—

1. That it doth not appear that the jury were sworn according to law, which requires that they should be sworn to make a true and faithful appraisement of damages, and how far the flowing complained of might be necessary.

2. That the jury appraised the damages sustained by the said *Lowell* from the 10th day of April, 1800, to the 10th day of April, 1803, whereas the verdict of a jury formerly had and judgment thereon is the measure of the yearly damages until an increase or decrease of said damages shall, by legal process, be obtained.

3. That the jury, in the present case, in the verdict by them returned, say that the said *Spring* is guilty of flowing part, but do not say what part of the land mentioned in the complaint.

4. That it doth not appear by the return of the sheriff, on the precept from the said court to him directed and delivered to be executed, by whom the jury, by virtue of said precept to be empannelled, were sworn ; nor what was the nature of the oath to them administered.

[ * 426 ]   * The defendant in error pleaded *in nullo est erratum.*

As this Court, in giving their opinions, confined themselves (principally) to the first error assigned, it is not thought necessary to state the arguments of the counsel as to the other errors.

*Bartlet,* for the plaintiff in error. By the statute upon which the process, now before the Court, was founded—the act of Feb. 27, 1796, (*stat.* 1795, *c.* 74)—it is provided, (*sect.* 2.) that " the jury shall be sworn to make a true and faithful appraisement of the yearly damages done to the complainant by so flowing his lands, and how

318

far the same may be necessary." The oath which was administered to the jury in the present case is essentially different. The certificate of the justice who administered the oath, and which comes up in the case as a part of the record and process, is, " that A, B, C, &c.," [naming the jurors,] "appeared and made solemn oath that they would carefully view the premises and render a true and just verdict according to law and evidence, without favor or partiality, according to their best judgment."

*P. Mellen*, for the defendant in error. The statute was made to remedy the inconvenience of proceedings at common law in these cases. It was made for the ease of the citizens, and ought to be construed liberally; and the Court will support the judgment if possible. It is not necessary that the oath should be certified *in hæc verba;* it is sufficient if the substance of it be certified. In the cases of constables and collectors of taxes, the law has prescribed particular forms of oath; so for executors and administrators, in certain cases; so for a coroner to administer to a jury of inquest; in all which cases a *general* certificate of the certifying officer has always been held sufficient; and the courts have never required that * the certifying officer should state in his [ * 427 ] certificate *the words* in which the oath was administered.

In this case, the warrant, under which the sheriff acted, and upon which the jury was sworn, points out the duty of the jury as prescribed in the statute. The certificate of the justice refers to the warrant; "the premises," mentioned in the certificate, can relate to nothing else. The words used are as strong or stronger than the words of the law; the jury swear to render a true and just verdict according to law and evidence; which is the same thing as if they had been sworn in the words of the law. And there is no instance where a certificate of the very words is required.

*Parker*, in reply. Although the statute does not prescribe the *form* of the oath, yet it prescribes the points to which the jury are to be sworn; and in words as positive, direct and unequivocal as if it had said, that "the oath shall be in the form following," and then have given the form of words. It ought to appear by the certificate that the oath was administered as the law prescribes, either in general terms or by the express words of it; at least, it ought not to appear that the oath administered was different from that prescribed by the statute. Had the certificate stated that the jury were sworn according to law, or according to the precept, or even simply that they were sworn, it would have been sufficient; for the presumption would be in favor of the officer certifying, that he had followed the law. But *here* the presumption is repelled; because it appears by the return of the justice that he has in fact sworn the

jury differently from the provisions of the statute. He has not pursued his authority, which it was his duty to have done, and not to have considered himself wiser than the legislature. The oath certified to have been administered is essentially different [ * 428 ] from that which the law requires. The sense and * meaning of it are not the same; nor could the jury know from it what were the duties the law required of them, as is evident from their verdict. That they might know what these duties in cases of this nature are, the statute has precisely defined and marked the points to which they are to be sworn. This not having been done, the judgment rendered upon their verdict is erroneous, and ought to be reversed.

THACHER, J. The first error assigned respects the oath which was administered to the jury. The law has, with great precision, prescribed the oath which is to be taken. The oath administered ought undoubtedly to be the same, or of the same import with that prescribed by the statute. The oath which is certified to have been administered in this case, is not the same, but essentially different; it does not import the same ideas, obligations, and duties. To the sufficiency of a certificate it is necessary that it should follow the words of the statute, or state *generally*, that the jury were sworn according to law; but when it appears from the certificate itself that the oath was not administered in manner prescribed by law, I am bound to say it is erroneous. And although it is with reluctance I say it in the present case, yet my duty is to declare that for this cause I think the judgment complained of cannot be supported. As to the other errors assigned, were it necessary to express an opinion, I think none of them is sufficient to reverse the judgment.

SEWALL, J. The act appointing this extraordinary mode of process, requires that "the jury," elected by the sheriff to inquire of the damages occasioned by any flowing of land, "shall be sworn to make a true and faithful appraisement of the yearly damages done to the complainant by so flowing his lands, and how far the same may be necessary." The oath now certified to have [ * 429 ] * been administered to and taken by the jury appointed in this case is essentially different. If variances, to the extent which appears in the present case, should be allowed, I cannot, for myself, discern where we should stop, or by what means the law, in this particular, can be enforced. An adherence to the prescribed forms, or substantially to the terms, of such oaths as the legislature directs in cases of this nature, for the qualification of those, who, under this sanction, are to exercise an authority over the property of their fellow-citizens, is necessary and important as a

320

general rule.   I may add, as an observation suggested to me by the circumstances of this case, that the terms of the oath administered are not always to be considered as a mere formality, because they may often operate, as in this case they have apparently done, to direct the jury in their proceedings.   The jury, in this case, employed themselves in a latitude of inquiry not warranted by the order of the Court, or by the commission under which they acted, but seemingly suggested by the oath which was administered to them.   And accordingly they have considered and determined a question not submitted to them—a question exclusively in the cognizance of the Court, and which had there been determined, namely, whether the respondent, the now plaintiff in error, had been guilty of flowing, and to what extent, upon the complainant's lands.

For this error, namely, that the jury appointed in this case had not been sworn as the law requires, if for no other, I am of the opinion that the judgment in this case must be reversed; though it is with reluctance that the Court defeat these expensive proceedings, upon objections, probably, not involving the real justice of the case.

SEDGWICK, J.   In this case, four errors are assigned.   I shall take notice only of the first, because I have no doubt that *that* is fatal.   It is, in *substance, that the jury appointed in  [ * **430** ] pursuance of the interlocutory judgment were not sworn `
according to law ; and it might have been added, justly, that although the jury performed the service according to the oath which they *did* take, yet that they omitted an important part of the duty which was to have been performed according to that which they *ought* to have taken.   It may be observed that the sacred rights of private property are never to be invaded but for obvious and important purposes of public utility.   Such are all things necessary to the upholding of mills.   Hence the legislature have authorized mill owners to invade the property of their neighbors, even real property, which by our laws seems to be regarded as the most inviolable, so as to render it wholly useless, by overflowing it with water, whenever the same shall be *necessary* to the beneficial occupation of the mills.   This invasion of private property is authorized only by statute, and in no case but from *necessity* for the attainment of the objects intended.   Hence the jury who are to decide on the respective rights of the parties are to swear " that they will make a true and faithful appraisement of the yearly damages done to the complainant by so flowing his lands, and how far the same may be necessary."   Before the mill-owner, against the will or without the consent of the owner of the land, shall become his tenant, at an annual rent, the necessity of flowing must be determined by the jury

In this case, the jury were sworn " carefully to view the premises, and to render a true and just verdict according to law and evidence, without favor or partiality, according to their best judgment." Hence it is obvious that the jury were not called upon. to consider whether it was at all necessary that the land' of the defendant should be flowed. It seems, indeed, strange that the plaintiff in error should complain of this ; and therefore I have been [ * 431 ] *anxious, if possible, to support the judgment; but I dare not permit a precedent of such laxity. If we may depart, in the imposition of oaths, from the form and substance of them,—and in this case the departure was substantial,—the rights of parties may be controlled in a manner never contemplated by the legislature. In this case, the jury neither undertook nor performed a very material part of their duty ; and I think it would be unsafe in the extreme to support a judgment rendered on a verdict found under these circumstances.

*Judgment reversed.*