SAMUEL P. STRICKLAND *& al. versus* FREDERICK J. PARKER.

A marine railway, consisting of iron and wooden rails and sleepers, endless chain, gear, wheels and ship cradle, and constructed in the usual manner, is a fixture, and will pass by a levy upon the realty.

By extending his execution upon his judgment debtor's undivided part of such railway and land on which it is located, the judgment creditor becomes a tenant in common with the other owners.

One tenant in common of such railway, having the general oversight of the business, receiving the income and paying the bills and dividends, is not thereby authorized to sell the whole railway.

If he does make such sale, and the purchaser thereupon removes the materials to another town, and there makes them into a new railway on his own land, a co-tenant may maintain trover for his proportion against the purchaser; and the seller's account for expenditures, &c., cannot be considered in such action.

ON FACTS AGREED.

TROVER, for twenty-three-sixtieths of the specific materials of a marine railway formerly built on land, twenty-three-sixtieths of which belonged to one J. P. Hardy, and the remainder to Theophilus Cushing and others.

The plaintiffs attached and levied upon Hardy's interest in the real estate, including the railway and its appurtenances. The several owners of the land built their respective proportions of the railway. Cushing had the general oversight of the business, paid bills, and received the income, and paid out dividends of earnings.

Several years after the levy, Cushing sold the whole railway to the defendant, who thereupon took it up and carried the materials to another town, and there made them into a new railway on his own land, paying Cushing $750 for the same, which sum Cushing claimed to hold on account of the balance due him for expenditures on account of the railway, the principal part of which accrued before the levy. The plaintiffs never gave Cushing any authority to do any act whatever respecting the railway, and never assented to any

use of it or otherwise interfered with it. It was out of repair and had not been repaired since 1856 or 1857.

If the plaintiffs could recover, the defendant was to be defaulted, as by the opinion. If Cushing's account afforded any defence which was not otherwise sustainable, a new trial was to be had, to inquire into its correctness.

*A. W. Paine,* for the plaintiffs.

*N. H. Hubbard,* for the defendant,

Cited 2 Greenl. on Evidence, 699 and note. Plaintiffs now own all they ever did. No right has been injured by the sale by Cushing. Parker has done nothing to sever the tenancy, or refused to account. If the tenancy has been severed, Cushing is the one in fault, and action should be against him and not against defendant. *Dain* v. *Cowing,* 22 Maine, 347 ; *Wheeler* v. *Wheeler,* 33 Maine, 347.

KENT, J. — The plaintiffs' title to the property, which is the subject of this action of trover, depends upon a levy on real estate made by them. At the time of the levy, there was on the land a marine railway, consisting of iron and wooden rails and sleepers, endless chain, gear, wheels and ship cradle, all being a part of the railway, forming its entire superstructure. The railway was made in the usual mode in constructing such works, by sleepers laid on the ground ; the chain and cradle forming a necessary part of the railway.

The first question is, whether the railway passed by the levy, or whether it was personal property, so disconnected from the realty, that it could only be seized and sold as a personal chattel.

The same principles of construction apply to a levy as to a deed, in determining what passes by the language used. *Waterhouse* v. *Gibson,* 4 Greenl., 230 ; *Winslow* v. *Mer. Ins. Co.,* 1 Mass., 316. This is also the rule in New York and Pennsylvania. The same rule applies to fixtures under a levy, as under a deed, and an article may constitute a

part of the realty, as between grantor and grantee, when it would not, under similar circumstances, be so treated as between landlord and tenant. *Powell & ux.* v. *Munson M. Co.,* 3 Mason, 359; *Parsons* v. *Copeland,* 38 Maine, 537.

The levy in this case refers to the railway as part of the real estate appraised, and the debtor had its value allowed to him. Did it pass by the levy?

It is not to be disguised that there is an almost bewildering difference and uncertainty in the various authorities, English and American, on this subject of fixtures, and on the question of what passes by a transfer of the realty. One thing is quite clear in the midst of the darkness; and that is, that no general rule, applicable to all cases, and to all relations of the parties, can be extracted from the authorities.

There has been a manifest tendency to divide this class of cases, and to apply very different rules, according to the relations of parties to each other. A rule which is prescribed for the case of a landlord and tenant is rejected as between grantor and grantee. And this distinction is observed in the case between mortgager and mortgagee, and again modified as between the heir and the executor.

The fact of actual and permanent annexation of the thing, personal in its nature, to the freehold, was formerly regarded as essential. But this has been found to be unsatisfactory and not fitted to meet the requirements of the law, when fixing a rule of general application, and has been abandoned as an absolute test. *Fay* v. *Muzzy,* 13 Gray, 56; *Winslow* v. *M. Ins. Co.,* 4 Met., 314.

Where there are no qualifications arising from the relation of the parties to each other, the question whether any erection is a fixture, and passes by deed or levy, must be determined upon the general doctrines of the law applied to the particular facts. The case of *Parsons* v. *Copeland,* 38 Maine, 537, contains a full discussion of the general subject, and settles the law in this State so far as its doctrines are applicable to the case before us. The marine

railway, which is the subject of this suit, was laid on the earth, and was in fact affixed thereto. Indeed, the soil made an important and indispensable portion of the erection. The structure did not merely rest on the earth, as a basis and support to a building or superstructure, which was no otherwise dependent on or indebted to the earth except as it upheld it in its place. The road bed, so far as one was required, is made of and by the earth. Independent of the solid earth, the superstructure, in itself alone, had no strength or substance required for the work to be performed. A railway consists as truly of its earth bed as of its rails and sleepers. The soil is thus a part of the whole, and not merely a resting place for a foundation on which are reared works perfect in themselves, and requiring nothing of the earth in their workings;—as a factory with its machinery and wheels and belts. .

It is regarded as one of the indications that the thing in question is a fixture, that it appears, from the whole case, that such was the intention of the owners of the soil who erected it. This point is stated in the case of *Parsons* v. *Copeland,* and is thus explained and enforced in the case of *Snediker* v. *Warring,* (a recent and leading case,) 2 Kernan, 170 :—" A thing may be as firmly affixed to the land by gravitation, as by clamps or cement. Its character may depend upon the object of its erection. Its destination, the intention of the person making the erection, often exercises a controlling influence, and its connection with the land is looked at principally for the purpose of ascertaining whether that intent was, that the thing in question should retain its original chattel character, or whether it was designed to make it a permanent accession to the land.

The facts agreed to in this case, we think, clearly indicate an intention to annex the railway to the soil, and to change whatever of a chattel nature belonged to any portion, and to make it a permanent accession to the land, so long as it existed.

It is the permanent and habitual annexation, and not the

manner of fastening, that determines when personal property becomes a part of the realty. *Luffkin* v. *Griffiths*, 35 Barb., 58; *Wall* v. *Hurd*, 4 Gray, 271.

The Supreme Court in New York had before them the question of what constitutes fixtures, as applied to a railroad, in the case of the *Farmers' Loan & T. Co.* v. *Hendrickson*, 25 Barb., 488. The exact point in controversy, in that case, was whether the locomotives and cars, and the rolling stock, were real or personal estate, and whether they would pass by a deed, executed and recorded as a deed of real estate. The Court held that they did pass as fixtures, or real estate, by such deed. Whatever doubts we might entertain on this point, we cannot hesitate in assenting to the first proposition laid down by the Court, that " the road bed, the rails fastened to them, and the buildings at the depots, are clearly *real* property." Indeed, no one in that case questioned this.

If we look at the numerous cases to be found in the reports, we shall find in the instances in which the question of fixtures has been raised, that the principles on which they were decided to be such, and the nature of those erections, confirm the view we have taken, — that this marine railway was, with its necessary appendages, a fixture, and passed by the levy. *Blethen* v. *Towle*, 40 Maine, 310, a cistern above ground, on blocks; *Bliss* v. *Whitney*, 9 Allen, 114, platform scales; *Bishop* v. *Bishop*, 1 Kern., 123, hoop poles; *Snedicker* v. *Warring*, 2 Kernan, before cited, a statue of Washington and sun dial. In all these cases, they were held to be fixtures.

Fixtures annexed by the owner of the land to real estate pass by sale or levy as real estate. *Bliss* v. *Whitney*, 9 Allen, 114. And so of necessary appendages, fitted and prepared to be used with real estate. *Farrar* v. *Stackpole*, 6 Greenl., 154; 1 Greenl. Cruise, 41, § 7.

This railway and appendages passed to the plaintiffs by levy, as real estate. They now bring this action of trover

for its conversion, as personal property. It is objected that, if it passed as real estate, *this* action cannot be sustained.

The levy was on twenty-three-sixtieths, in common. The plaintiffs then became tenants in common with Cushing and others, who owned the remainder. Cushing, who had the general oversight of the business, sold the whole railway to the defendant, who thereupon took the whole up and removed it to another town, across the river, and there made a new railway out of the materials, on his own land.

We can find no authority in Cushing to sell the whole. He was, at best, but a co-tenant, having a general oversight, but without any authority, express or implied, to sell anything more than his own undivided interest. By the purchase, if of any validity, the defendant only became a tenant in common of an undivided portion.

If property, before it was detached was a fixture, the person having title to the realty can sue for the recovery of the thing itself, after it had been detached as personal property. *Lufkin* v. *Griffiths*, 35 Barb., 62. *Riley* v. *Boston Water Power Co.*, 11 Cush., 11, which was an action for the value of certain loads of gravel, taken wrongfully from the plaintiff's land and sold by the wrongdoer to the defendants, who bought in good faith. The action was sustained. *Phillips* v. *Brown*, 7 Gray, 26.

The common case of trees severed from the freehold and converted, which are always regarded as personal property, is another illustration of the general rule.

But it is further contended, that there has been no such interference with the property as will enable a co-tenant to maintain trover. It is urged that here has been no destruction of the common property, and the counsel for the defendant cites and relies upon the conclusion, drawn from the authority (as he understands it,) in 2 Greenl. on Ev., 699, — "that, to maintain the action, there must be either a destruction of the common property, or something equivalent to it, and that where the thing substantially ex-

Strickland *v.* Parker.

ists, within the reach of the party, the tenancy in common remains unchanged."

Admitting that this is not too strongly stated, we do not understand that by destruction is intended a physical destruction by burning or other means, so that nothing of the materials remains. But it means that the thing owned in common is no longer that thing; but something else, that cannot be used or possessed by the parties as before. The rule however, as stated, has other qualifications. Anything equivalent to destruction is equally effective. And further, if the thing is so changed that it is no longer the same thing, or if removed, and put into such a condition that the co-owner cannot avail himself of his right, but the same is out " of his reach," the thing, as to him, is destroyed, within the meaning of the rule.

In this case, the whole structure was taken up and removed to another town, and the materials used to construct a *new* railway on land of the defendant. The plaintiffs had no property in this new railway. They had no interest in the land, and no right to enter upon it. The defendant assumed the entire right and ownership, and this was what he bought. The thing no longer existed so as to be within the reach of the party. The plaintiffs' rights were as effectually destroyed as if the whole materials had been burned.

We have no doubt that these admitted facts make out a clear case of conversion by a co-tenant, within the strictest rules that have ever been promulgated.

It has been decided in this State, that a co-tenant can maintain trover against another co-tenant, who has claimed to own and assumed to sell the whole of the common property, and that these facts are sufficient evidence of conversion, (33 Maine, 347,) or, when he has by his acts caused the destruction of it. *Ibid.* To the same point, *Weld* v. *Owen*, 21 Pick., 559 ; *Boobier* v. *Boobier*, 39 Maine, 409 ; *Bryant* v. *Clifford*, 13 Met., 138.

The rights of the parties in this suit cannot be affected by the claim set up by Mr. Cushing to retain the purchase

money paid to him, on account of his services and disbursements whilst acting as general superintendent.   Those matters must be adjusted between the owners.   This defendant has nothing to do with them, and he must be held liable for his act of conversion.

The damages, it is agreed, are to be assessed at twenty-three-sixtieths of $750 and interest.

*Defendant defaulted.*

APPLETON, C. J., CUTTING, DICKERSON, BARROWS and TAPLEY, JJ., concurred.