## THOMAS v. DAVIS, *Appellant.*

1.   **Fixtures, Test of what Constitutes.** Whether a chattel becomes a fixture or not does not depend so much upon the character of the fastening by which it is held down, (whether slight or otherwise,) as upon the nature of the article and its use as connected with the use of the freehold. As between the mortgageor and mortgagee, the true criterion consists in the united application of several tests: 1st, Real or constructive annexation of the article in question to the realty. 2nd, Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected. 3rd, The intention of the party making the annexation, to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation and the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made. See *State Savings Bank v. Kercheval*, 65 Mo. 682.

2.   **Fixtures : EVIDENCE OF CUSTOM.** As between landlord and tenant evidence of custom with respect to chattels annexed to the realty, by which they are treated as personalty, is admissible, but not so with respect to articles annexed by a mortgageor or grantor before the execution of his conveyance.

3.   ——— : CASE ADJUDGED. The owner of a lot erected upon it a substantial frame building, which he fitted up with machinery for smelting lead, consisting of a boiler, engine, pump, fan, water tank, pulleys, air drums and three eyes or basins. The boiler was a portable one which had formerly been used elsewhere, and rested on iron posts which stood on stone-work let into the ground. For the pur-

pose of holding the heat, brick-work was built half way up the sides of the boiler. The engine and fan rested on a frame-work of timbers which were bolted together and partly sunk into the ground. By means of pulleys the engine was connected with a line of shafting which was firmly attached to upright studding, and this shafting was likewise connected with and operated the fan by other pulleys. The eyes or basins, which were of brick and cast-iron, were connected by tight-fitting pipes with stacks built of brick and resting on foundations of solid masonry. The whole of this machinery was intended and adapted for the business of lead smelting. The owner gave a deed of trust upon the lot on which it stood, without particularly describing the machinery. *Held*, that it had become permanently fixed to the freehold and passed by the deed.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

*L. P. Cunningham* and *C. A. Winslow* for appellant.

The evidence of custom should have been received. It was the law of the contract. *Soutier v. Kellerman*, 18 Mo. 509; *Southwestern F. & C. P. Co. v. Stanard*, 44 Mo. 71; *Kimball v. Brawner*, 47 Mo. 398. It is generally admissible in these cases. Ewell on Fix., 63, 109, 307. The engine and boiler were personal property and as such passed to defendant. *Hunt v. Mullanphy*, 1 Mo. 508; *Burk v. Baxter*, 3 Mo. 207; *Lacey v. Giboney*, 36 Mo. 320; *Rogers v. Crow*, 40 Mo. 91; *Graves v. Pierce*, 53 Mo. 429; *Collins v. Mott*, 45 Mo. 100.

*E. T. Montague* for respondent.

The engine and boiler were part of the realty and passed by the first deed of trust. *McRea v. National B'k*, 66 N. Y. 489.

HENRY, J.—This suit is for the recovery of a steam engine and accompanying machinery and for damages. Plaintiff had judgment, from which defendant appeals.

Plaintiff claims the property under a deed of trust executed by one Corn, conveying to him lot 19 and other lots in the city of Joplin, to secure a promissory note executed by Corn. On said lot was a building erected by Corn in which the machinery in question was placed by him for the purpose of smelting lead. This deed was executed June 4th, 1874.

On the 11th day of June, 1875, Corn executed a second deed of trust, to secure certain other creditors, conveying to Ed. T. Allen said lot 19, and other lots conveyed by the prior deed, and also other real estate not mentioned in the first deed; said real estate was in the latter deed conveyed, "together with all privileges, including my residence, furnaces, engines, boilers and machinery situated upon the property described, or any part thereof." Defendant purchased the property conveyed by said second deed at a sale thereof by said trustee on the 26th day of May, 1876, and removed the machinery in controversy from the building. The testimony as to the manner in which the machinery was annexed to the building, is as follows:

James S. Zane testified: That defendant asked him if he knew a man who would move the engine and boiler and machinery out of Corn's smelter in Joplin, and witness sent him Mr. Bentley for that purpose; that Bentley brought the machinery to Thurman and put it in witness' care; that the smelting building was built in 1872; the boiler rested on an iron post, and the front part sat on that, the back part rested on an iron post, and that post sat on the stone foundation; the boiler rested on the iron posts and the posts on the stone-work; the brick-work was built up the sides of the boiler for holding the heat; the foundation was stone and brick-work half way up the boiler; the engine set on cross-timbers; the pipes leading from the eyes ran into the back part of the jam; the fan rested on timbers; the frame-work is just timbers laid down; the pipes were fitted to the jam, tight. The expense of taking the machinery back and setting it up would be $250.

The things removed by defendant were the boiler and engine and apparatus connected therewith. The boiler was a portable boiler, and had been used in some other place or places before being used in the smelting furnace.

M. M. James testified: At the date of the deed of trust there was a large frame building on the lots, erected in 1872, which was erected, and the machinery placed in it, for the purpose of smelting lead mineral into pig lead. There was studding, which supported the roof; the building was built in a substantial manner, was painted, and had in it a boiler, engine, pump, fan, water-tank, pulleys, air drums and three eyes; there was a slag-eye; one was a scotch hearth, one a basin, and the other a water-back; the eye consisted of a jam or basin; there was a brick and cast-iron basin and a cast-iron hearth; the hearth and basin were in one piece; the jam is all one piece; the three stacks were all connected and rested on a stone foundation of solid masonry; the thickness of the base of the stacks was from eight to ten feet; it was eight or ten feet from the base of the stack; two of the stacks were brick to the roof and then sheet-iron. The engine was set down on the left hand side of the boiler upon sills let in the ground; there were two sills under ground and two crossing them, and the upper sills bolted to the lower. The foundation of the boiler was of stone let into the ground; half way up the side of the engine a belt ran to a pulley on a line of shafting, to a pulley or head firmly attached to the upright studding and cross beams; from that line of shafting there was a pulley running down to run the fan-blower. There was a pump to furnish water for the boiler and to wash mineral. The stone-work, the brick-work, the building and the stacks were left. The expense of hauling the machinery back, after it was seized in this suit, was fifty odd dollars. The building was built by S. B. Corn, permanent in character, and, with the machinery placed in it, was intended and adapted to the purposes of a smelting furnace.

If the articles sued for were fixtures, defendant acquired no title by his purchase, but they passed by the deed to plaintiff. If not so attached to the freehold that they became part of the realty, defendant acquired the title to them by his purchase, and plaintiff had no right to recover.

It is difficult to define the term " fixtures," and there is inextricable confusion, both in the text books and adjudged cases, as to what constitutes such an annexation of chattels to the realty, as to make them part, and pass by a conveyance, of the realty. An attempt to reconcile the authorities on the subject would be futile, and to review them would be an endless task. As was well observed by Kent, J., in *Strickland v. Parker*, 54 Me. 265: "It is not to be disguised that there is almost bewildering difference and uncertainty in the various authorities, English and American, on this subject of fixtures, and on the question of what passes by a transfer of the realty. One thing is quite clear in the midst of the darkness; and that is, that no general rule, applicable to all cases, and to all relations of the parties, can be extracted from the authorities."

As between mortgageor and mortgagee, it is well settled that the same rule applies which exists with respect to fixtures, as between heirs and executors or administrators. Ewell on Fixtures, 27; Hill on Fixtures, 60. In *Fisher v. Dixon*, 12 Cl. & F. 312, cited by Mr. Hill, the House of Lords held that: " When the absolute owner of land in fee, for the purpose of better using the land, erects upon and affixes to the freehold, certain machinery, such as is in use in making coal, and in mines, it will go to the heirs as part of the real estate; and if the corpus of such machinery belongs to the heir, all that belongs to the machinery, although more or less capable of being detached and being used in such detached estate, from it, must be considered as belonging to the heir." In *Mather v. Frazer*, 2 Kay & Johnson 536, also cited by Mr. Hill, the vice chancellor, Wood, held that: "Even in regard to manufactur-

ers, all articles affixed to the freehold, whether by screws, solder or any other permanent means, or by being let into the soil, will descend to the heir, or pass by conveyance of the land; that the rule of law by which fixtures are held less strictly, when erected for manufacturing purposes, has no application to fixtures erected by the owner of the land in fee." It is held in New York, that, as between mortgageor and mortgagee, whatever is annexed or affixed to the freehold, by being let into the soil, or annexed to it, or to some erection upon it, to be habitually used there, particularly for the purpose of enjoying the realty, or some profit therefrom, is a part of the realty. *Buckley v. Buckley*, 11 Barb. 43; *Fisher v. Saffer*, 1 E. D. Smith 611. It may be so betwixt landlord and tenant with respect to articles attached by the latter, without a previous agreement between them, fixing their character, but this is not an infallible test as between mortgageor and mortgagee. "Some of the exceptional cases, (said Parker, C. J., in *Despatch Line of Packets v. Bellamy Man. Co.*, 12 N. H. 282,) seem to have made the question depend upon the character of the fastening, whether slight or otherwise. But this is a criterion of questionable character, not sustained by the weight of the decisions. More depends upon the nature of the article and of its use as connected with the use of the freehold." This doctrine was approved in *Lathrop v. Blake*, 23 N. H. 66, but in the same case, in the succeeding paragraph, the court remarked that: "It is, however, necessary that machines or other articles should, in some way, have been connected with the realty, or have been so placed that the removal of them would involve either the destruction or impairment, or substantial injury of the freehold, in order that the same shall be regarded as constituting a part of it." There seems to be a contradiction between these two statements, and in *Burnside v. Twitchell*, 43 N. H. 390, the doctrine, as announced by C. J. Parker, *supra*, is reiterated. If the fixture, in order to become part of the realty, must be so firmly annexed, that its re-

moval would involve the destruction, impairment or sub-
stantial injury of the freehold, the manner of the annexa-
tion, whether slight or otherwise, would seem to be a ma-
terial question.    We are inclined to the opinion that the
true doctrine was announced by Parker, C. J.

In *Strickland v. Parker*, 54 Me. 263; *Parsons v. Cope-
land*, 38 Me. 537, the court observed that :    " It is the per-
manent and habitual annexation, and not the manner of
fastening, that determines when personal property becomes
a part of the realty."    Many articles have been held to be
fixtures, in controversies between grantors and grantees,
and mortgageors and mortgagees, which, although at-
tached to the freehold, could have been removed without
substantial injury to the freehold, and in disputes between
persons holding those relations to each other, the adjudica-
tions in which the contests were between landlords and
tenants have little or no application, because the strict rules
which are applied in the former class of controversies,
have been relaxed, with a view to the encouragement of
mechanical and agricultural pursuits.

As between landlord and tenant evidence of custom
with respect to chattels annexed to the realty, by which
they are treated as personalty, is admissible, but not so
with respect to articles thus annexed by a mortgageor or
grantor, before the execution of his conveyance.    He has
absolute dominion over the property, both real and per-
sonal, and his intention in making the annexation is to be
determined by a consideration of the character of the an-
nexation, and its appropriation or adaptation to the use or
purpose of that part of the realty with which it is con-
nected.    Ewell on Fixtures, *supra*.    Judge Story, in *Van
Ness v. Pacard*, 2 Pet. 137, observes that:    " Every demise
between landlord and tenant, in respect to matters in which
the parties are silent, may be fairly open to explanation by
the general usage and custom of the country, or of the
district where the land lies.    Every person, under such

circumstances, is supposed to be cognizant of the custom, and to contract with a tacit reference to it." But we can-not conceive how there could be a custom to control the effect of a deed between grantor and grantee. What would pass by the deed as part of the realty could only be excepted by an express reservation, and such reservation would have to be made in every deed for no number of express reservations in deeds, would establish a custom. A custom which might be clearly established, as between landlord and tenant, could not possibly affect a conveyance by the owner of the fee who had 'annexed the chattels to the realty. We are of the opinion that the court did not err in excluding the evidence offered by defendant to prove a custom, by which the articles in question, are regarded as chattels.

The instruction asked by defendant and refused by the court, did not declare the law applicable to the case. It entirely ignored, not only the question of the manner in which the machinery was attached to the realty, but also the question of its permanent and habitual annexation, and all the tests by which it is determined whether chattels annexed to realty are part of the realty or retain their character of personalty, except one which we have seen, is not the only or an infallible test. It was in substance, that if the machinery was put into the building and used for the purpose of manufacturing pig lead, and it could be or was removed from said building without doing material damage to itself or said building, it was personal property. Under such an instruction, if the machinery could be re-moved without material injury to itself, or the realty, it was wholly immaterial how firmly or permanently attached or with what purpose it was annexed to the realty. Such is not our view of the law, and the court properly refused it.

The court tried the cause without the intervention of a jury by agreement, and necessarily passed upon the ques-tions ignored by the refused instructions, and as no other

instructions were asked or given, we are not inclined to interfere with the verdict. All concurring, the judgment is affirmed.