HOMESTEAD LAND COMPANY, Respondent, vs. BECKER, Receiver, imp., Appellant.

*April 12 — April 30, 1897.*

*Fixtures: Intention: Giving of chattel mortgage.*

Where the engines, boilers, and other fixed machinery constituting the equipment of a factory and being a part of the realty had passed as such to a corporation, subject to a mortgage which it

Homestead Land Co. vs. Becker.

had agreed to assume as consideration for the conveyance, the un-
explained action of the corporation in taking up such mortgage
and giving in lieu thereof a new note secured by mortgage of the
same real estate and also by a chattel mortgage of all said fixed
machinery did not operate *per se* to impress upon such property
the character of personal estate, as between the mortgagee and a
general creditor of the mortgagor.

APPEAL from a judgment of the circuit court for Milwau-
kee county: CHAS. V. BARDEEN, Judge. *Affirmed.*

The plaintiff brought this action to foreclose a mortgage
for $15,684.01, on certain lots in block 11, in the continua-
tion of Layton Park, etc., in the county of Milwaukee, upon
which lots was a tack and nail factory, equipped with an
engine and boiler, shafting, pulleys, and belting, and tack
and nail machines, bolted to the timbers of the building, and
connected with said shafting by belts; the whole being used
as a factory for the manufacture of tacks and nails. The
defendant *Becker*, as receiver, had obtained a judgment for
$14,611.36, rendered July 21, 1893, against the Milwaukee
Tack & Nail Company, the mortgagor, upon which execu-
tion had been issued and levied upon said machinery, he
claiming the same to be personal property, and the plaintiff
claiming the same to be a part of the real estate and cov-
ered by its mortgage. The plaintiff had loaned and advanced
to the firm of Austin, Soule & Brazier, who were engaged
in the manufacture of tacks and nails, large sums of money,
which were used and expended in the construction and build-
ing of the tack and nail factory in question, on lots sold and
afterwards conveyed by it to said company, and in the pur-
chase of additional machines and machinery which were
placed in the factory.

It was found by the court that said building was pur-
posely constructed with strong foundations and heavy tim-
bers, on which the floors thereof are placed, the upper floor
being supported by strong posts, in order to make it suffi-

ciently firm to carry the heavy machinery to be placed in the second story of said building; that said firm and their grantee, the Austin, Soule & Barnett Company, placed in said factory all the machines and machinery in controversy, and attached the same to the ground and building, with the purpose and intention that the same, as a whole, should constitute a plant and factory for the manufacture of tacks and nails, and that such plant and factory, including machines and machinery, should be permanent fixtures and accessions to the freehold, and that the business of the manufacture of tacks and nails should be permanently established and conducted on said property; and, to that end, the boiler and engine, designed to furnish power to propel and operate said machinery, were built upon brick foundations, reaching below the first floor of said building, and several feet into the ground; that the shafting used therein is adapted to said building, and was securely fastened to the upper floors, and to the sides thereof, by iron hangers bolted to the timbers supporting the second floor and timbers constituting the sides and framework of said building; that all the machines were securely fastened to said building, by being firmly bolted to the floors thereof, and connected to the shafting by belts and pulleys, and were propelled by power furnished by said engine and boiler, through belts connected with said shafting; and that it was the purpose and intent of said firm, and their grantee, the Austin, Soule & Barnett Company, to make said machines and machinery, and the whole thereof, a permanent annexation to the freehold, to be used as aforesaid.

It was further found that said Austin, Soule & Brazier, being indebted to the plaintiff for said moneys, and for the price of said lots, in the sum of $15,684.01, executed their promissory note for that sum, payable May 18, 1894, together with a mortgage upon the lots described, securing the same, which was duly recorded May 22, 1889; that on the 14th of Janu-

ary, 1891, they organized a corporation under the laws of the state, called the Austin, Soule & Barnett Company, for the purpose of manufacturing tacks and nails in said factory, and conveyed said premises to said corporation, the real consideration for which was the assumption by said company of said indebtedness then due from the said firm to the plaintiff; that subsequently said mortgage was released, and, in place thereof, the said corporation, on the 14th of January, 1891, executed its promissory note for the mortgage debt to the plaintiff, together with a mortgage on said lots and premises constituting the factory, etc., which was recorded February 11, 1891, which is the mortgage being foreclosed, and, at the same time, executed and delivered to the plaintiff its certain chattel mortgage, securing the same debt, in which is described not only certain personal property, consisting of tools used by the laborers, etc., but also all the fixed machines and machinery, including the engine and boiler in said factory, which chattel mortgage was filed July 27, 1893; that the name of said corporation was afterwards changed to the "Milwaukee Tack & Nail Company," and it purchased and placed in said factory, covered by said mortgage, twelve additional tack or nail machines, which were firmly bolted to the floors of said building, and connected with the said shafting therein by belts and pulleys, and propelled by power furnished by said engine and boiler, the same as the other tack and nail machines already therein, which were intended to be permanent additions to its factory, to be used in the business thereof; that afterwards, and in the month of August, 1893, the defendant *Becker*, as receiver of the Wisconsin Marine & Fire Insurance Company Bank, having obtained judgment, issued execution thereon, and levied the same as already stated.

There was evidence to the effect that the machines varied in weight from 150 to 2,000 or 2,500 pounds, a majority of them weighing from 300 to 500 pounds. They were bolted

to the floor, by bolts with nuts on them, so they could be, and were, moved from place to place in the building, by taking out the screws and detaching them from the shafting, and putting them in another place and connecting them with the shafting.

The court held that the property thus levied on had become and was a part of the real estate, and was subject to the plaintiff's mortgage, and it was adjudged accordingly, from which the defendant *Becker*, as receiver, etc., appealed.

For the appellant there was a brief by *Miller, Noyes, Miller & Wahl*, and oral argument by *B. K. Miller, Jr.* They contended, *inter alia*, that the parties had elected to treat the machinery as personal estate. *Smith v. Waggoner*, 50 Wis. 155; *Second Nat. Bank v. O. E. Merrill Co.* 69 id. 501; *Walker v. Grand Rapids Flouring Mill Co.* 70 id. 92; *Sword v. Low,* 122 Ill. 487; *Myrick v. Bill,* 3 Dak. 284. A recital that property is personal estate estops the parties from saying it is real. *Ballou v. Jones,* 37 Ill. 95; *McFadden v. Allen,* 134 N. Y. 489; *Horn v. Indianapolis Nat. Bank,* 125 Ind. 381; *Binkley v. Forkner,* 117 id. 176; *Morey v. Hoyt,* 62 Conn. 542.; *Tyson v. Post,* 108 N. Y. 217.

For the respondent there was a brief by *Fish & Cary*, and oral argument by *R. N. McMynn*.

PINNEY, J. In *Taylor v. Collins*, 51 Wis. 123, the following rules or tests are approved for determining whether articles of machinery are fixtures: "(1) Actual physical annexation to the realty; (2) application or adaptation to the use or purpose to which the realty is devoted; (3) an intention on the part of the person making the annexation to make a permanent accession to the freehold." The matter of intention of the parties is held to be the principal consideration.

The machinery, etc., in dispute was annexed to the realty by the original mortgagors, the grantors of the judgment debtor, and it was subsequently seized as personal property

on the execution against the defendant the tack company, in favor of the defendant *Becker*, receiver, etc.   There was an actual physical annexation of the property to the realty.   It was applicable and adapted to the use and purpose to which the realty was devoted.   It was clearly intended to be an accession or addition to the freehold, unless it can be maintained that its character was determined to be that of personal estate by the subsequent execution and delivery of a chattel mortgage thereof by the corporation, mortgagor in the real-estate mortgage, to the plaintiff, at the time the latter was executed and delivered.   The lots had been sold to the parties who erected the factory by the plaintiff, and it had loaned them the money with which to erect it, furnish machinery, and put the factory in operation.   The property was conveyed, when completed, to these parties by the plaintiff, and they mortgaged it to it, to secure the debt for the lots and money loaned.   Subsequently, they organized as a corporation, to which the premises were conveyed by them, in consideration that the corporation would assume the payment of the mortgage debt to the plaintiff.   Up to this time nothing had occurred, so far as shown, to indicate any other intention than that the machinery, etc., should be regarded as a part of the realty, to which it had been annexed and to the use of which it was particularly adapted.   Under the operation of the general rule, as between mortgagor and mortgagee, no intention of removing it having been shown, the machinery, etc., passed by the mortgage to the plaintiff of the freehold, and had so passed to the mortgagors by the previous deed of the premises to them from the plaintiff; and this although it was capable of being removed without injury to the building.   *Frankland v. Moulton*, 5 Wis. 1; *Voorhees v. McGinnis*, 48 N. Y. 278; *Pierce v. George*, 108 Mass. 78.

Subsequently, on January 24, 1891, the corporation now the tack company executed and delivered to the plaintiff its

note for the amount of the plaintiff's mortgage debt, and a mortgage securing the same on the same premises, the plaintiff discharging its former mortgage. At the same time, the corporation executed and delivered to the plaintiff a chattel mortgage to secure the payment of such new note, upon all the fixed machines and machinery, including the engine and boiler in the factory, etc.; and the plaintiff filed this mortgage July 27, 1893, after judgment had been entered against the corporation, the tack company. No explanation or reason is shown why the chattel mortgage was given, beyond the inference that may fairly arise that the parties intended to make the plaintiff's lien on the factory, machinery, etc., safe and certain, beyond any doubt or question. Certainly nothing appears indicating that the parties contemplated or intended a severance or removal of this machinery from the factory. The execution of the chattel mortgage, therefore, is not sufficient *per se* to change the character of the machinery, which it had already acquired, and raise a presumption of an intention to restore the character which it had formerly possessed as personalty before it was placed in the factory; and it is very doubtful whether the chattel mortgage ever became operative at all. *Kendall Mfg. Co. v. Rundle*, 78 Wis. 150–158. These views are also sustained by the following cases: *Fifield v. Farmers' Nat. Bank*, 148 Ill. 163; *Meagher v. Hayes*, 152 Mass. 228; *McRea v. Central Nat. Bank*, 66 N. Y. 489; *Strickland v. Parker*, 54 Me. 265; *Winslow v. Merchants' Ins. Co.* 4 Met. 306. The cases cited by the appellant fail to show that, under the facts stated, the execution of the chattel mortgage would operate, by estoppel or otherwise, to convert the machinery, etc., that had previously been annexed to and made a part of the freehold, into personal estate, so that the mortgage of the freehold would fail or cease to bind it. The lien of the plaintiff's mortgage covered all that had become realty before or at the time it was executed, and all subsequent acces-

sions to the realty, unless, by a valid agreement to which it was a party, the character of personal estate was impressed thereon. *McFadden v. Allen*, 134 N. Y. 489. The contemporaneous execution to the plaintiff of the chattel mortgage to secure the same debt did not *per se* operate to impress upon such property the character of personal estate.

The judgment of the circuit court, that the machinery, etc., was subject to the plaintiff's mortgage on the real estate, was correct.

*By the Court.*— The judgment of the circuit court is affirmed.