JUDG-E BULLITT
delivered the ofihioh oe the court:
Clanton & McFadden executed a note in Kentucky, where they resided, to Short & Co., residents of Louisiana, payable at their office in New Orleans, with interest at the rate of eight per cent, per annum. The note was indorsed and assigned by Short & Co., to Cayce & Hopkins, and by them to Trabue & Co. Both assignments were made in Kentucky, where Cayce & Hopkins and Trabue & Co. resided. The stipulated interest is lawful in Louisiana, and not here. The note not having been paid at maturity, Trabue & Co. had it protested, gave notice of its dishonor, brought this action against Short & Co., and obtained a judgment against them for the amount of the note and eight per cent, interest, from which they appeal.
By the law of this State, a remóte assignor of a note is not primarily liable to the holder; and the immediate assignor is only liable for the consideration received, with six per cent, interest; and the holder cannot make him liable without first prosecuting the payor with diligence. The judgment must, therefore, be reversed, if the liability of Short & Co. is governed by the law of this State.
The allegations of Trabue & Co., that, “by the law of Louisiana, where the said writing is payable, it is placed on the footing, and has the force and effect, of a bill of exchange,” is denied by the answer and not sustained by the proof, and, therefore, we need not consider the effect of an indorsement, here, of a paper having the form of a note, according to our law, and the effect of a bill, according to the law of another country in which it is payable.
It is proved, however, that, by the law of Louisiana, each prior indorser of a note like this is primarily liable to the holder, for the amount of the note and the stipulated interest, *301 not exceeding eight per cent., upon a protest and notice of non-payment, without a previous suit against the payor; and the'counsel of Trabue & Co. contend that Short & Co. are liable according to that law.
The question, what law governs a contract, depends, theoretically at least, upon the intention of the contracting parties. But, to ascertain their intention, the courts have established certain i-ules, which experience teaches that it is better to observe, though they may sometimes defeat the intention of parties, than to attempt to ascertain their intention by considering their verbal declarations, or the minute circumstances of each particular case.
According to those rules, an agreement to perform an act at a particular place, is presumed to be made with reference to the law of that place; and an agreement to perform an act, without designating a place of performance, is presumed to be made with reference to the law of the place at which the agreement is made. And these presumptions are conclusive. Regarding the obligation of the contract, as a general rule, a person agreeing here to perform an act in another country is precluded from showing, by any evidence whatever, that he contracted with reference to the law of this State; and a person agreeing here to perform an act, without designating a place of performance, is precluded from showing, by any evidence whatever, that he contracted with reference to the law of any other country. The same rule applies to both parties to the contract.
The-counsel of Trabue & Co. concede, that, as a general rule, an indorsement of a note or bill, such as was made by Short & Co., makes the indorser liable according to the law of the place of indorsement. But they rely upon the facts, that Short & Co. resided in New Orleans,:that the note was payable there, and that it bears Louisiana interest, for the purpose of showing that Short & Co., when they indorsed it, contemplated taking it up in New Orleans,- if the makers should fail to pay it; and, consequently, that they, as indorsers, contracted with reference to the law of Louisiana, and are bound thereby.
*302 One of the cases cited in support of that position is the case of Grimshaw vs. Bendor, (6 Mass., 157,) which was a suit upon a bill drawn at Manchester, on a Boston firm, and accepted on the same day, to be paid in London. The court said: “It appears that the bill was drawn on a Boston house, one of which was then at Manchester, in England, but that his domicil was in Boston; and that the acceptance by him, in the name of the firm, was made at Manchester, by which the firm undertook to pay the bill in London in six months. From this statement it is manifest that the remedy contemplated by the parties, in the event of the bill being dishonored, must be sought in this State, where the acceptors lived. From this view of the case, the instrument must be considered as a foreign bill, having the same effect as if the payee had sent it to Boston, and it had been accepted payable in London by the house here, in which case the money must be remitted to London to meet the bill remitted to the payee after acceptance.”
This reasoning is not satisfactory. The fact that the parties contemplated that, upon the dishonor of the bill, the remedy would be sought against the acceptors at the place of their residence, does not prove that they regarded the law of that place as governing the nature and obligation of the contract. A resident of Massachusetts, temporarily here, and making here a note payable generally, and another note payable in New York, may safely be assumed to contemplate that, upon his default, the holder of each note will seek his remedy in Massachusetts. Yet, it is well settled, that the nature and obligation of the former note would depend upon the law of this State, in which it was executed, and those of the other upon the law of New York, where it was payable.
The fact that Short & Co. resided at the place where this note was payable, may furnish reason to believe that they expected to pay it there if the payors should fail to pay it. But when a resident of another State executes a note here, payable at no particular place, is there not equal reason to believe that he expected to pay it at the place of his residence? And is there not as much reason for applying the land of the dom- *303 icil to the nature and obligation of the contract in the latter case as in the former?
According to the case of Grimshaw vs. Bendor, Clanton and McFadden are liable according to the law of Kentucky, because they resided here, though they promised to pay the note in Louisiana; whilst Short & Co. are liable according to the law of Louisiana, because they resided there, though they indorsed the note here. We are not aware of any other case in which the nature or obligation of a contract has been held to d epend upon the lex domicilii. In all other cases known to us those qualities of a contract are held to depend upon the law^ of the place where it is made, or where it is to be performed.
The authority of that case is, in our opinion, justly questioned by Judge Story, who, after stating that it is directly in conflict with Foden vs. Tharp, (4 John. R., 183,) says, that the latter case “being in entire harmony with the general principles on this subject, will probably obtain general credit in the commercial world.” (Con. of Laws, sec. 320.)
The counsel of Trabue & Co. also cite the case of Rothchild vs. Currie, (1 Ad. & El. N. S., 43,) which was a suit by an indorser against the payee and indorser of a bill, drawn in England on, and accepted by, a French house, both the plaintiff and defendant being domiciled in England; and it was held, that notice of the dishonor of the bill, given by the plaintiff to the defendant, according to the law of France, was sufficient. • The court said: “This bill being payable in Fx-ance, is a foreign bill, and, although drawn in England, must be taken, as between the drawer and drawee, to have been made in France. * * And if this be so as between the drawer and drawee, it is equally true as between the indorser and in-dorsee, the former of whom must be considered as the drawer of a new bill, payable at the same place, in favor of the in-dorsee. * * Being in law a new drawer of the bill, the same state of things is supposed to exist, as between him and the indorsee, as the law supposes between the drawer and drawee.”
We have not discovered a good reason for excepting contracts of indorsement from the general rule, that a contract to *304 be performed at no particular place is governed by the law of the place where it is made. Nor do we perceive any reason whatever for holding, as was done in Rothchild vs. Currie, that a person, who, by an indorsement, agrees, upon certain implied conditions, to take up a bill, generally occupies the same attitude toward his indorser, which a person, who, by an acceptance, agrees to pay a bill at a particular place, occupies toward the drawer or payee.
According to the doctrine of that case, it would seem that the law of the place where a note or bill is payable, should fix the rights and liabilities of every indorser as to damages or interest, as well as notice of dishonor. And it was accordingly held, in another case cited by the counsel of Trabue & Co., that, upon a note made in Canada and indorsed in Vermont, in both of which places the rate of interest was six per cent., and payable in New York, where the rate of interest was seven per cent., the indorser, as well as the maker, was liable for seven per cent, interest. (Perks vs. Mayo, 14 Vermont, 33.) But the better opinion probably is, that each indorser is liable for interest or damages according to the law of the place of his endorsement. (2 Parsons on Notes and Bills, 372; Story on Bills, sec. 153; Story on Con. of Laws, sec. 314, andcases cited.)
' The decision in Rothchild vs. Currie is sanctioned by Mr. Parsons, (2 Notes and Bills, 339, note j,) and was approved and followed by the Supreme Court of Indiana in Shanklin vs. Cooper, (8 Blackf., 41.) Possibly there may be reasons for holding that notice of dishonor should be given to indorsers, according to the law of the place of payment, which do not apply with reference to the liability of indorsers in other respects. But, even with reference to giving notice of dishonor the decision in Rothchild vs. Currie seems to be» opposed by preponderating authority. (Story on Bills, sec. 296, note 4; Aymer vs. Sheldon, 12 Wend., 439; Allen vs. Merchants' Bank, 22 Wend., 215; Dundas vs. Bamler, 3 McLean, 397.) So far as the doctrine of that case applies to the question involved in this case, it is not sustained by any direct decision, that we are aware of, except that in the above named case of Shanklin vs. Cooper, whilst it is directly in-conflict with the decisions in the follow *305 ing cáses: Holbrook vs. Vibbard, 2 Scammon, 465; Hatcher vs. McMorine, 4 Dev., 122; Lowry’s' adm’r. vs. Western Bank of Georgia, 7 Ala., 120; Cox vs. Adams, 2 Kelly's Ga. R., 158; Mix et al vs. the State Bank, 13 Ind. R., 521; Hunt vs. Standart, 15 Ind. R., 33, expressly overruling Shanklin vs. Cooper. In each of those cases, except Cox vs. Adams, the action was against the indorser of a note payable in one State and indorsed in another, the laws of which differed, notice to the indorser being required by the law of one and not by that of the other; and it was held that his liability depended upon the law of the place of indorsement. The only difference between those cases and that of Cox vs. Adams is, that in the latter the note was not payable at any particular place. But that distinction was not material, p'erhaps, because the note was presumptively payable in Georgia, where it was executed, and the maker’s liability was governed by the law of that State, as the court .conceded, just as it would have been had the note been expressly payable there; yet the indorser’s liability was held to depend upon the law of Alabama, where the indorsement was made.
We do not perceive how this controversy between assignors and assignees can be affected by the fact that the makers of the note agreed to pay eight per cent. Merest That fact does not seem to be material, even for the purpose of showing that the makers of the note contemplated Louisiana as the place of performance of their contract, because the latter fact is conclusively proved by their stipulation to pay the note in New Orleans. Each of those stipulations bound them only, and not the assignors. We do not perceive how the former stipulation, any more than the latter, can prove that the assignors contemplated Louisiana as the place of performance of their contract.
Another question is presented. It was proved that when the note was executed, one of the makers, Clanton, agreed to ship produce to Short & Co., they agreeing to sell it and pay the note with the proceeds. And this is relied upon as showing that Short & Co., when they indorsed the note a few days afterward, contemplated taking it up in New Orleans. But we do not consider the fact, that Short & Co. expected to' sell *306 produce and pay the note.with the proceeds, as the agents of Clanton, as sufficient to prove that they contemplated taking up the note in New Orleans, as indorsers, upon the failure of Clanton to ship the produce, and upon the failure of Clanton & McFadden to pay the note. It may be assumed that the payee of a note for value always expects the makers to pay it. Whether he expects them to do so by forwarding produce or money, and whether he expects them to forward the produce or money to himself or to some one else, would seem to be immaterial. It is, therefore, unnecessary to decide whether or not the pleadings laid a foundation for the evidence on this subject.
In our opinion, neither of the facts relied on by the appel-lees can relieve this case from the operation of the general rule upon this subject, which was thus stated in the case of Hunt vs. Standart, cited above: “The maker binds himself to pay at the place named in the note for payment, and there his contract is to be performed. The indorser promises, upon certain conditions, which are not expressed in the contract of in-dorsement, but which are implied by law, that he will pay the note; but not that he will pay it at the place named in the note for payment. His promise is general, for the payment of the note on the implied conditions; and such general promise, not specially to be performed elsewhere, is governed by the lex loci contractus, which must determine the condition upon which he is to be held liable.”
We do not regard this position as in conflict with the reasoning of the court in Goddin vs. Shipley, (7 B. Mon., 575,) to which we are also referred. On the contrary, the court there expressed a doubt whether an indorsement and assignment, here, of an instrument having the form of a note according to our law, but which was placed on the footing of a bill by the law of Missouri, where it was payable, made the indorser liable, according to our law, as the assignor of a note, or as the in-dorser of a bill; and reasons were suggested for supposing that he might be liable as the assignor of a note, though that position seems to conflict with another part of the opinion, in which it was said, according to the laws of Missouri, “the note *307 is, in effect, an inland bill of exchange, and the rights and liabilities of the parties are to be governed by the law relating to those instruments. It is to be treated as an inland bill, not only in Missouri, but wherever its character and effect come in question.” It is true that the court, in stating the supposed case, spoke of an assignment made here, “and by a citizen of Kentucky.” But we do not suppose that the court meant to intimate that a contract of assignment is governed by the lex domicilii, since that position would conflict with a previous part of the opinion, which recognizes the correctness of the doctrine that contracts, to be performed at a particular place, are tobe governed by the laws thereof. , At any rate, such a dictum oannot be regarded'as entitled to much weight.
The. judgment is reversed, and the cause remanded' with directions to discharge the attachment and dismiss the petition without prejudice.