## RUTH W. PIERCE & another *vs.* NATHAN GEORGE.

A mortgage on machinery in a building was given in contemplation of the machinery being annexed to the realty; and after it was annexed, a mortgage was given on the land and building. *Held*, that the second mortgagee could hold the machinery against the first mortgagee.

A mortgage of a building used as a machine shop covers polishing frames, machines, pulleys and shafting, bolted or screwed to the floor or timbers of the building, although they can be removed without substantial injury to the building; also a machine bolted to blocks which are bolted to the floor; and also wheels belonging to the polishing machine, although they can be detached therefrom without injury. But it does not cover machines which are not fastened to the floor, but are supported by their own weight, nor machines which are fastened to benches, although such machines are run from the shafting; nor vises screwed to benches, although the benches are attached to the building by nails.

TORT for the conversion of machinery and tools. The case was referred by order of the superior court to an auditor, the material part of whose report was as follows :

" I find that on March 15, 1867, Crawford Pierce, Joseph R. Pierce and Henry O. Lothrop, then residing and doing business in Milford, were the owners of a machine shop in Milford, which they had erected and were then occupying for the purpose of manufacturing therein heel and toe plates and shoe nails, and were also on that day the owners of certain machinery in said shop, which they used for the purposes of their manufacture ; that on that day the said owners made a chattel mortgage of said property to Fisk & Haven to secure the payment of $3200 in one year with interest, and said mortgage was duly recorded April 13, 1867, with the records of mortgages of personal property in Milford ; that the title to said property acquired under said mortgage by Fisk & Haven is now vested in the plaintiffs ; that on April 27, 1867, the Pierces and Lothrop mortgaged the machine shop and the lot of land upon which it stood to the defendant, to secure the payment of a debt ; and that the defendant is now the owner of the real estate mortgage and debt, which is unpaid. The plaintiffs claim title to the machinery under the mortgage to Fisk & Haven, and the defendant claims title thereto under his real estate mortgage.

" The machinery was connected with and attached to said building as follows :  1. A large punch weighing 3500 lbs., bolted to blocks, and the blocks bolted to the floor timbers of the building.  It was operated by a belt and pulley connected with a counter shaft, which was connected by a belt and pulley with a line of main shafting running through the building.  2. Two small punches, weighing 400 lbs. each, fastened to the floor by screws, and operated by a belt and pulley connected with the main shaft, as above.  3. Two counter sinking lathes, small machines, fastened to a bench by screws, and operated by a foot movement passing through the bench from beneath.  4. Three polishing frames, two large and one small, fastened at one end by bolts to a wooden post in the building, and at the other end to plank supports bolted to the floor timbers.  They were operated by belts and pulleys attached to counter shafting, which was connected with the main shaft, as above.  5. Two rubber emery wheels and twenty-two wooden wheels, which belonged to the polishing frames, but could be detached therefrom without injury to the machine, for the purpose of being repaired or replaced. 6. One rattler and frame, a small machine, its bearings resting upon wooden supports fastened to the timbers of the building, and run by a belt and pulley connected with the main shaft. 7. Five large grindstones, resting upon frames which stood upon the floor, and operated by belts and pulleys ; three of them connected with the main shaft by counter shafting, and two connected directly with the main shaft.  8. Three vibrators, weighing 1600 lbs. each, the frames consisting of wooden posts twelve inches square and ten feet high, mortised to the timbers of the building above, and at the lower end resting upon stone blocks upon the ground under the floor.  The posts were kept in place below by the floor planking, and the machines were run by belts and pulleys connected with the main shaft by counter shafting.  9. One polisher, fastened to the floor and operated from the main shaft, as above.  10. Two tack machines, weighing 2600 lbs. each, resting upon the floor, supported only by their own weight, and operated from the main shaft as above.  11. One slitter, weighing 600 lbs., resting upon blocks which rested upon

the floor, not fastened, and operated from the main shaft as above. 12. One wrought iron and two cast iron vises, fastened to benches by bolts, and the benches fastened to the building by nails. 13. One 8-foot engine lathe, 24 inch swing, and one hand lathe, with counter shafting and hangers to each machine. These machines rested upon the floor without being fastened thereto, and were operated by a belt and pulley connected by the counter shafting with the main shaft. 14. One fan-blower, bolted to a plank, which was bolted to the roof timbers of the buildings, and operated by the main shaft, through counter shafting. 15. One portable blacksmith's forge, resting on the floor, without fastening, and connected by a pipe with the chimney of the building. 16. Pulleys, shafting and hangers, fastened to the timbers of the building by bolts and screws, and connected with the machines by belts. 17. Two anvils, resting upon blocks which stood upon the floor.

" All said machinery could be detached and removed from the building without substantial injury either to the machines or to the building; except the vibrators, which could not be removed without taking up the floor of the building. The motive power to run the machinery was furnished by a steam engine connected with the building. All the machinery was purchased, designed for and adapted to said business.

" On March 15, 1867, when the Fisk & Haven mortgage was given, all said machinery was in the shop for the purpose of being set up, but only the large punch, one grindstone, and the anvils and forge were in position as above described; but all said machinery had been placed in position, as described, prior to April 27, 1867, when the defendant's real estate mortgage was given. The Fisk & Haven mortgage was given in contemplation that all the machinery should be set up and fastened to the building, as above described.

" On or about September 7, 1869, the defendant took possession of said real estate under his mortgage, the condition thereof having been broken, locked the doors of the shop and retained the key in his custody. All the property described in the plaintiffs' writ was then in the building, and has continued there until the present time. On September 30, 1869, the plaintiffs de-

manded all said property of the defendant, and the defendant, claiming the title to the machinery mentioned above, refused to give up said machinery to the plaintiffs, but he never claimed the title or possession of the other property, and never refused to restore it to the plaintiffs, nor to permit the plaintiffs to take it from the building; and I find that the defendant never converted it to his own use. As to the machinery above enumerated, I find that the defendant converted it to his own use, and is liable in this action therefore, unless the court should determine upon the foregoing statement that the defendant was the owner thereof as against the plaintiffs."

The parties agreed that the question of the ownership of the property should be submitted to the court on the auditor's report as an agreed statement of facts. If the title to all the property was in the defendant, judgment was to be rendered for him; if the title to all or any part of said property was in the plaintiffs, then judgment to be rendered for the plaintiffs for such articles of the property as the court should determine to belong to them, the value to be fixed by an assessor to be appointed by the court. The superior court gave judgment for the defendant, and the plaintiffs appealed.

*P. E. Aldrich*, for the plaintiffs, cited *Burk* v. *Hollis*, 98 Mass. 55 : *McLaughlin* v. *Nash*, 14 Allen, 136 ; *Voorhies* v. *McGinnis*, 46 Barb. 242 ; *Lacey* v. *Giboney*, 36 Missouri, 320 ; *Vanderpoel* v. *Van Allen*, 10 Barb. 157 ; *Hellawell* v. *Eastwood*, 6 Exch. 295 ; *Gale* v. *Ward*, 14 Mass. 352 ; *Murdock* v. *Gifford*, 18 N. Y. 28 ; *Swift* v. *Thompson*, 9 Conn. 63 ; *Sturgis* v. *Warren*, 11 Verm. 433 ; *Bartlett* v. *Wood*, 32 Verm. 372.

*F. P. Goulding & H. B. Staples*, for the defendant, cited *Winslow* v. *Merchants' Insurance Co.* 4 Met. 306 ; *Richardson* v. *Copeland*, 6 Gray, 536 ; *Clary* v. *Owen*, 15 Gray, 522 ; *Lynde* v. *Rowe*, 12 Allen, 100 ; *McLaughlin* v. *Nash*, 14 Allen, 136 ; *Talbot* v. *Whipple*, Ib. 177 ; *Farrar* v. *Stackpole*, 6 Greenl. 154 ; *Parsons* v. *Copeland*, 38 Maine, 537 ; *Burnside* v. *Twitchell*, 43 N. H. 390.

AMES, J. In ascertaining what are fixtures, the object, the effect and the mode of annexation are to be considered. *Mc-*

*Laughlin* v. *Nash*, 14 Allen, 136. The question between these parties is governed by the rules which apply to the case of mortgagor and mortgagee; the defendant claiming the contested property by virtue of a mortgage of the real estate, and the plaintiffs under an earlier conveyance from the mortgagor, in which the machinery is described as personal property. The report finds that, before either of the mortgages under which the parties respectively claim was made, the mortgagors owned a machine shop which they were occupying for manufacturing purposes, and were also owners of the machinery described in the report. It appears also that all the machinery had been placed by them in position, before the defendant's title accrued. Under such circumstances, and inasmuch as the report finds that the mortgage under which the plaintiffs claim was given in contemplation that all the machinery should be set up and fastened to the building as described in the report, we think that whatever the mortgagors annexed to the freehold, for the more convenient use and improvement of the premises, must pass by the mortgage of the real estate. *Winslow* v. *Merchants' Insurance Co.* 4 Met. 306. Articles placed in a mill by the owner to carry out the obvious purpose for which it was erected, and adapted to that purpose, are generally part of the realty, notwithstanding the fact that they could be removed and used elsewhere. *Parsons* v. *Copeland*, 38 Maine, 537. In a building erected as a factory, the steam works relied upon to furnish the motive power, and the works to be driven by it, are essential parts of the factory, adapted to be used in it and with it, and would pass with it by a conveyance of the real estate. *Winslow* v. *Merchants' Insurance Co.* 4 Met. 306.

By this rule the large punch, the three polishing frames, the three vibrators, the polisher, the fan-blower, and the pulleys, shafting and hangers, appear from the auditor's report to have been annexed to the freehold and specially adapted to be used in connection with it. They therefore became part of the machine shop, and could not be severed from it without the defendant's consent. The two small punches, although not so firmly attached to the building, appear to us to fall within the same rule. The wheels belonging to the polishing frames come somewhat near to

the dividing line, but as they are understood to be essential parts of the polishing machines, they must be governed by the same rule.

But the lathes fastened to a bench by screws, and operated by a foot movement; the five grindstones resting upon frames standing upon the floor; the rattler and frame, the tack machines, the slitter, the anvils, the vises, the lathes, and the portable forge, are none of them fixtures in any sense of the word. For the value of these articles, to be determined by an assessor,

*The plaintiffs are entitled to judgment.*