WILDER S. HOLBROOK *vs.* HENRY H. CHAMBERLIN & others.

Worcester.   September 30. — October 23, 1874.   COLT & MORTON, JJ. absent.

An unauthorized execution of a deed, either of a partnership or an individual, may be ratified by parol.

If A. and B. are partners, and A. signs the names of both to a lease, and both of them enter under the lease, this amounts to a ratification by B. of the act of A.

Lessees of a mill covenanted " to deliver up the premises and all future erections and additions to or upon the same " at the end of the term, " in as good order and condition as the same now are or may be put into by the lessor." The lease was for a term of years to begin at a future day. When the lease was made, glass in some of the windows was broken. New glass was put in by the lessees before the term began, in consideration of being allowed by the lessor to occupy part of the premises in the mean time. *Held,* that the lessees were bound to pay for glass which was broken during the term of the lease. *Held, also,* that the lessees were entitled to

remove all machinery in the nature of trade fixtures or personal property put in during the term of the lease.

Counter-shafting, pulleys, hangers and belts, though fastened to a building, a portable boiler, and steam pipes supported by hooks attached to a building, are either trade fixtures or personal chattels, and may be removed by a lessee who puts them into a building; and the fact that the lease contains an agreement of the lessor to sell the premises to the lessee makes no difference.

A portable wood-cutting machine, worked by a belt attached to a factory, is a chattel, and does not pass by a lease which demises the factory and land; and the lessees are not liable for injury done to it by them on the covenants of the lease, whereby they agree to deliver up the premises in good condition at the end of the term.

CONTRACT against Henry H. Chamberlin, John M. Barker and Warren D. Hobbs, to recover the rent of certain premises situated in the town of Sutton, leased by the plaintiff to the defendants by two leases under seal, and for damages resulting from the alleged breach of certain covenants therein. By the first lease, which was dated January 17, 1865, the plaintiff leased to the defendants " a certain factory building and water privilege with all the appurtenances thereto belonging for the term of five years from April 1, 1865. The lessees covenanted, among other things, " to quit and deliver up the premises and all future erections and additions to or upon the same, to the lessor or his assigns peaceably and quietly, at the end of the term, in as good order and condition (reasonable use and wearing thereof, and damages by fire or other casualties excepted) as the same now are or may be put into by the lessor, or those having his estate in the premises." The lessor agreed to sell to the defendants, " at any time within two years from date, all the property known as the Sutton Woollen Manufacturing Establishment " for a specified sum.

By the second lease, which was dated April 1, 1865, the plaintiff leased to the defendants for five years " all the land and buildings as they are upon the premises known as the Sutton Woollen Mills Estate " in Sutton, "meaning and intending to demise and let all that portion of the estate " not let to the defendants by the first lease. The lessees covenanted to deliver up the premises at the end of the term in as good order and condition " as the same now are, or may be put into by the lessor," " and not make or suffer any waste thereof."

At the trial in the Superior Court, before *Bacon*, J., the report of an auditor was the only evidence offered by the plaintiff. None of the findings of the auditor were controverted except the following :

The defendants offered evidence tending to show that the defendant Barker's name was signed to the first lease by Warren D. Hobbs, one of the other defendants, not in the presence of the said Barker, and without authority in writing from said Barker, and that Barker never personally signed the same; and they requested the judge to instruct the jury that the plaintiff could not recover under that lease unless Hobbs had authority from Barker under seal to execute the same, or unless Barker was present at the time it was so executed. This ruling the judge refused to give, but ruled that even if Hobbs had no authority to sign Barker's name, yet Barker, having entered under the lease, having afterwards taken the second lease of the other premises, and having executed that himself, was estopped from showing that Hobbs was not authorized to sign his name.

The auditor found that after the first lease was executed, but prior to April 1, 1865, the defendants set the glass which was broken in the mill and factory houses and effected other repairs therein, in consideration of being permitted by the plaintiff to occupy part of the mill and one of the factory houses free of rent from the date of said lease to April 1, 1865; and that these repairs were regarded by the parties as if made by the lessor, and that the covenants in the leases referred to the condition of the leased property as it stood on April 1, 1865; and that when the defendants took possession of the premises demised in the first lease, the windows were in good condition in the buildings named therein and the panes of glass properly set therein, but that at the expiration of said lease several of the windows and a large quantity of the glass were broken by some party other than the plaintiff, and the damages sustained by the plaintiff in the premises the auditor found to be seventy-five dollars.

The auditor further found that the premises were used by the defendants from April 1, 1865, until 1866, when they were changed to a cotton mill and afterwards used as such, the machinery used therein was operated by water power in the usual manner; that in 1866 the defendants placed in the mill additional machinery consisting of counter-shafting, pulleys, hangers and belts; the counter-shaft was belted from the main shaft, and with the pulleys and hangers appertaining thereto, was fastened to the timbers or floors of the building by bolts and screws, and was

connected to the machines by belts. All this machinery was pur-
chased for and adapted to the use of the mill as a cotton mill, and
all of it could be detached and removed from the building with
out substantial injury thereto or to the machines. On December 1,
1868, the defendants ceased to occupy the premises, and E. Fisher
& Sons occupied the same as lessees of the defendants. The
plaintiff assented to this assignment by writing under seal. In
1869, E. Fisher & Sons removed from the premises the said coun-
ter-shafting, pulleys and hangers to the value of $220, and the
aforesaid belts to the value of $50, and converted them to their
own use.

The defendants contended upon the above facts, that the plain-
tiff could not recover for the glass, counter-shafting, pulleys, hang-
ers and belts, but the judge ruled that he could.

It further appeared, from the auditor's report, that the defend-
ants, during their occupation of the mill, introduced appliances
for heating it by steam, consisting of a portable boiler for gen-
erating steam, set horizontally on a flat stone, with cemented
brick and stone set on each side of it, supplied with water by a
force pump screwed to the floor, and operated by the wheel of the
factory; the steam being conveyed over the building by three
rows of steam piping extending horizontally along two sides and
one end of three rooms and through the ell, and having the usual
joints and elbows; these pipes passed through the floors of the
factory from one story to another, and were supported by hooks
screwed to the building, and when the posts in the building came
in their way, holes were bored therein, through which the pipes
ran. While Fisher & Sons were in occupation, a new boiler was
put in which was set upright on the ground near where the old
boiler had stood, and the connection of the pipes was changed to
the new boiler. Both boilers were connected with the chimney
by flues. In September, 1869, Fisher & Sons removed said steam
pipes, amounting to 1500 feet, with the joints and elbows and
other fittings belonging thereto, and converted them to their own
use to the value of $405. The defendants contended, upon the
above facts, that the plaintiff could not recover this item.

It further appeared that at the commencement of the leases
a machine called Daniels's wood-cutting machine stood on the
premises described in the first lease, outside the mill and eighteen

inches therefrom. This machine was movable, weighed about 300 pounds, and was used for cutting up brush and wood. It was operated by a belt running from the main shaft of the fac‐ tory to a counter-shaft, and thence to the machine. There was no agreement between the parties as to the use of this machine, unless the same passed by the first lease ; but when the defend‐ ants took possession of the premises under this lease, they contin ued to use the machine, as it had before been used, and as above stated, until it was broken and disabled by the defendants, and became of but little value, and was not afterwards repaired by them. The table on which the machine stood remained on the premises at the expiration of the lease. The damage to the ma‐ chine was $55. The defendants contended, upon the above facts, that the plaintiff could not recover for this item.

The defendants asked the court to rule that upon the above facts the plaintiff was not entitled to recover in this action, which ruling the judge refused to give, and instructed the jury that the plaintiff was entitled to recover the several amounts found by the auditor as in his report stated.

The jury thereupon returned a verdict for the plaintiff for the sum of $1760, and the questions of law were, by consent of par‐ ties, reported for the consideration of this court. " If the fore‐ going rulings are correct, judgment is to be entered for the amount of the verdict, less any of the foregoing sums ·which the court may rule he is not entitled to recover, if any, with in‐ terest thereon from the time from which interest lawfully runs ; if otherwise, the verdict is to be set aside and a new trial granted "

Part only of each argument is reported.

*J. Hopkins*, for the plaintiff. 1. The shafting, pulleys, hang‐ ers, belts and steam pipes were fixtures. The ordinary rule as to fixtures between landlord and tenant differs from that between landlord and tenant having a bond for a deed. In this latter case the same rule applies as prevails between vendor and vendee and mortgagor and mortgagee. *McLaughlin* v. *Nash*, 14 Allen, 136. *Winslow* v. *Merchants Ins. Co.* 4 Met. 306. The essen‐ tial elements of a bond are an agreement in writing, under seal, delivered to the obligee, to do a certain thing therein specified on the performance by the obligee of the condition precedent in the agreement mentioned. Bac. Ab. Obligations, A, B. This agree‐

ment to sell the premises had all of the essentials of a bond for a deed, was specifically enforceable in equity, and a suit at common law would lie for a breach of it; and the rule as to fixtures between the parties is the same as prevails between vendor and vendee and mortgagor and mortgagee, and not as between landlord and tenant. *McLaughlin* v. *Nash*, *supra*. *Oakman* v. *Dorchester Ins. Co.* 98 Mass. 57. Between vendor and vendee things personal in their nature but attached to and specifically designed for use in connection with the granted premises pass by the deed. *Noble* v. *Bosworth*, 19 Pick. 314. *Weston* v. *Weston*, 102 Mass. 514.

2. The wood-cutting machine was part and parcel of the demised premises. It was attached to the premises at the time of the demise, was used in connection with them at the time the defendants entered into possession, was by them used afterwards in the same connection, and it passed to them under the lease as it would have passed to them by deed. *Winslow* v. *Merchants Ins. Co.* 4 Met. 306.

3. If the shafting, pulleys, hangers, belts and steam pipes were not in the ordinary sense fixtures that could not be removed, having reference to the relations of the parties as constituted by the lease and the agreement to sell therein contained, then the plaintiff is entitled to recover for them by reason of the covenant to deliver up the premises and all future erections and additions. *Sunderland* v. *Newton*, 3 Sim. 450. *Rex* v. *Topping*, M'Clel. & Y. 544. *Naylor* v. *Collinge*, 1 Taunt. 19. *Penry* v. *Brown*, 2 Stark. 403. *Martyr* v. *Bradley*, 9 Bing. 24. *West* v. *Blakeway*, 2 Man. & G. 729.

*F. T. Blackmer*, for the defendants. This suit being on an action of covenant, setting forth a sealed instrument, and declaring thereon as such, the plaintiff must prove that all the defendants signed the instrument under seal, or that Hobbs had authority to sign the name of Barker in order to recover as the pleadings now stand. The plaintiff cannot recover against Barker on this lease, having declared on it as a sealed instrument, as no authority under seal was ever given to Hobbs to sign Barker's name. *Berkeley* v. *Hardy*, 5 B. & C. 355. *Milton* v. *Mosher*, 7 Met. 244. 1 Parsons Con. 47. No subsequent ratification of the act of Hobbs or of his authority to sign the lease would make

the instrument the sealed instrument of Barker. Ratification of an act done by one assuming to be an agent relates back, and is equivalent to a prior authority. And when the adoption of any particular form is necessary to confer this authority in the first instance, there can be no valid ratification, except in the same manner. *Despatch Line of Packets* v. *Bellamy Manufacturing Co.* 12 N. H. 205. *Hunter* v. *Parker*, 7 M. & W. 322, 343. The acceptance of a deed or lease with a provision that the grantee or lessee shall do something therein expressed, raises an implied contract to do it, but no action can be maintained upon the express covenants contained in the instrument. *Braman* v. *Dowse*, 12 Cush. 227. *Parish* v. *Whitney*, 3 Gray, 516.

GRAY, C. J. The law is settled in this Commonwealth, that the unauthorized execution of a deed in the name either of a partnership or of an individual may be ratified by parol. *Cady* v. *Shepherd*, 11 Pick. 400. *Swan* v. *Stedman*, 4 Met. 548. *McIntyre* v. *Park*, 11 Gray, 102. The defendants have therefore no ground of exception to the ruling that the defendant Barker, having entered under the lease sued on, was estopped to show that his copartner was not authorized to sign his name to it.

The remaining questions in the case relate to the effect of the covenant of the lessees to " deliver up the premises and all future erections and additions to or upon the same " to the lessor at the end of the term " in as good order and condition as the same now are or may be put into by the lessor."

The panes of glass in the windows, repaired after the date of the lease and before the beginning of the term, appear by the report to have been so repaired by the lessees in consideration of being allowed by the lessor to occupy part of the premises during the same period. They were thus in effect repaired by the lessees in behalf of the lessor, and stood as if they had been put in repair by the lessor before the execution of the lease ; and the plaintiff is entitled to recover the value of the glass afterwards broken during the term.

It was admitted at the argument, that at the beginning of the term there was no machinery on the premises, except the main shaft. The counter-shafting, pulleys, hangers and belts, the portable boiler and the steam pipes connected with it, were either trade fixtures, removable by the lessees during the term, or per

sonal chattels. *Poole's case*, 1 Salk. 368. *Lawton* v. *Lawton*, 3 Atk. 13. *Winslow* v. *Merchants Ins. Co.* 4 Met. 306, 311. *McLaughlin* v. *Nash*, 14 Allen, 136. *Pierce* v. *George*, 108 Mass. 78. The fact that the lease contained an agreement of the lessor to sell the premises to the lessees did not affect their rights in this respect.

The right of a tenant to remove trade fixtures may doubtless be qualified by the covenants in the lease. But we are of opinion that the covenant to deliver up in good order " all future erections or additions " to or upon the premises is limited, in purpose and effect, to new buildings erected or old buildings added to — putting such erections and additions upon the same footing, in respect of the obligation to keep in repair, as the buildings upon the premises at the time of the execution of the lease; and cannot be extended so as to deprive the tenants of the right to remove trade fixtures, much less personal property, put by them upon the premises during the term. *Bishop* v. *Elliott*, 11 Exch. 113.

In *Naylor* v. *Collinge*, 1 Taunt. 19, the things removed were " buildings," coming within the very words of the covenant; and yet such of them only as were affixed to the freehold, and not such as rested upon blocks, were held to be included. In all the other cases cited for the plaintiff upon this point, the covenant either expressly named the fixtures or comprised " all improvements."

It follows that the learned judge of the Superior Court erred in instructing the jury that the plaintiff was entitled to recover the value of the articles put in and taken away by the defendants.

The wood-cutting machine, belonging to the lessor and upon the premises at the beginning of the lease, was also, within the authority of *McLaughlin* v. *Nash* and *Pierce* v. *George*, above cited, a mere chattel, which did not pass to the lessees by the lease, and for the destruction of which the lessor cannot maintain an action upon the covenants therein contained.

It follows that, according to the terms of the report, the sums assessed by the auditor for which we have held the plaintiff not to be entitled to recover are to be deducted from the amount of the verdict, interest computed on the remainder from the date ot the writ, and

*Judgment rendered for the plaintiff accordingly.*