FREDERIC C. POPE *et als. vs.* ISAAC JACKSON.

Cumberland, 1875.—August 5, 1876.

*Replevin. Pleading. Trial. Fixtures.*

The objection to the maintainance of replevin by all of several plaintiffs because only one of them has given the bond required by R. S., c. 69, §§ 1 and 2, is not open to the defense under the plea of *non cepit.* It should have been taken by abatement.

The plea of *non cepit* admits the capacity of all the plaintiffs.

Where, in replevin, the brief statement alleges the property to be in the defendant and not in the plaintiff, the title of the latter is directly put in issue with the burden resting upon him.

A mortgagee cannot hold as a fixture an embossing press owned and put into a building by a lessee of the mortgageor. In this case the presses weighed about five thousand pounds each and were standing upon the floor without any other attachment to the realty except by a steam pipe, three-quarters of an inch in diameter, one end of which was fixed to the boiler in the factory, thence extending under the bed of the highway, with the other end connected with the presses by a coupling with a right and left screw, (the steam being used simply for heating purposes.)

ON REPORT from the superior court.

REPLEVIN for two embossing presses.

The defendant pleaded *non cepit* and further for brief statement: "that at the time when the taking of the said goods and chattels is supposed to be, the property of the same was in the said defendant, to wit, at said Windham; without this, that the property of the same goods and chattels, was in the said plaintiffs, as they by the writ and declaration above suppose; and this he is ready to verify: Wherefore he prays judgment and a return of the same goods and chattels to be adjudged to him, and for his costs."

To which the plaintiffs filed replication as follows: "And for counter brief statement and replication in the above entitled cause, the said plaintiffs say that they ought not to be precluded from having and maintaining their said action, because they say that at the time of the taking of the said goods and chattels described in their said writ, the property of the said goods and chattels, was not in the defendant, as he has alleged in his brief statement and plea, and this they pray may be inquired of by the country."

After the evidence was out, the case was made law on report.

*J. Howard, N. Cleaves* and *H. B. Cleaves,* for the plaintiffs.

*A. A. Strout* and *G. F. Holmes,* for the defendant.

VIRGIN, J. Pleadings. The defendant's objection to the maintainance of this action by all of the plaintiffs as surviving partners of F. C. Pope & Co., for the alleged reason that only one of them has given the bond required by R. S., c. 69, §§ 1 and 2, cannot be sustained. It was not seasonably taken. It should have been pleaded in abatement. The plea of *non cepit* admitted the capacity of all the plaintiffs. *Strang* v. *Hirst,* 61 Maine, 9. *Brown* v. *Nourse,* 55 Maine, 230.

Neither is the plaintiffs' point as to the burden of proof tenable. The plea of *non cepit* alone does not deny the plaintiffs' title in the chattels replevied, but rather admits the fact. Neither does a brief statement alleging property in the defendant, except by implication; and in such case, the burden is on the defendant to sustain his affirmative allegation. But when the brief statement alleges the property to be in the defendant and not in the plaintiff, the title of the latter is thereby directly put in issue with the burden resting upon him. *Dillingham* v. *Smith,* 30 Maine, 370. *Moulton* v. *Bird,* 31 Maine, 296. *Cooper* v. *Bakeman,* 32 Maine, 192.

The brief statement here is not drawn in the modern, concise form, but the denial of the plaintiffs' title is expressed by what Mr. Stephens denominates "that peculiar and barbarous formula, (*absque hoc*) 'without this, that,'" &c.; which constitutes in pleading a technical form of negation, and is equivalent to *et non,* and is sometimes called a formal traverse, or a traverse with an *absque hoc.* Steph. Plead., (ed. 1871,) 181, *et seq.* Gould Plead., c. 7, §§ 6, 7 and 8. Lawes Plead., 116, *et seq.* This form of plea was adopted in *Presgrave* v. *Saunders,* 1 Salk., 5, and in *Quincy* v. *Hall,* 1 Pick., 357. When the defendant thus pleads property and traverses property in the plaintiff, the counter brief statement should take issue on the title of the plaintiff; since a traverse of property in the defendant is not material. Com. Dig. Pleader, 3 K., 12.

Facts. Some of the material facts are only vaguely developed by the evidence reported; but we think the following sufficiently appear.

Prior to December, 1870, the firm of Isaiah Pope & Co., owned certain real estate on Pleasant river, in Windham, comprising a grist-mill, woolen-factory, and another building situated on the opposite side of the highway, designated by the witnesses as the "long building," or "long shed." The mills and factories were operated by the firm, and the "long building" used for storing wool, drying cloth, etc. At the date mentioned, a new firm consisting of I. P. & Co. with F. C. Pope added was formed and commenced the business of manufacturing felt. They were to occupy any part of the buildings of I. P. & Co., necessary to their business, I. P. & Co. having put some machinery into their factory adapted to that business, including a steam boiler, etc.

In 1871, but prior to Nov. 13th, Charles Staples & Co. manufactured the two embossing presses in controversy for F. C. Pope & Co., which were placed in the "long building," and subsequently paid for. The presses weighed about five thousand pounds each, and stood upon the floor without any other attachment to the reality except by a steam pipe three-quarters of an inch in diameter, one end of which was fixed to the boiler in the factory, thence extending in a wooden box under the bed of the highway, with the other end connected with the presses by a coupling with a right and left screw. The steam through this pipe was used simply for heating purposes.

On Nov. 13th, 1871, the several members of I. P. & Co., by their mortgage deed, conveyed the premises to the defendant. In addition to a description of the land on which the buildings stood, the mortgage included in terms, "the buildings, mills and factories, together with the machinery, belts, tools and fixtures of every name and nature contained therein."

The presses were not the property of I. P. & Co., when the mortgage was executed, but belonged to Staples & Co., who sold them to F. C. P. & Co. in February following.

Isaiah Pope died the following April, whereby the firm of F. C. Pope & Co. became dissolved, being then insolvent. They no

longer occupied the premises which were soon afterwards surrendered to the defendant, he receiving possession under his mortgage.

At best F. C. Pope & Co. were tenants at will, they having had no written lease. Whatever might have been the rule for determining the right of removal of the presses as between F. C. Pope & Co., owners of the presses, and Isaiah Pope & Co., owners of the realty—had that question arisen prior to the surrender of the premises to the defendant—now the question must be settled in accordance with the rule which prevails as between mortgageor and mortgagee. *Lynde* v. *Rowe*, 12 Allen, 100.

If the presses by being placed in the "long building," did not lose their character as personalty, and take on the attribute of realty, they did not pass by the mortgage; for Charles Staples & Co., and not the mortgageors then owned them, and their status has never been changed. If, however, they did thereby become incorporated with the realty, the time, whether before or after the execution of the mortgage, would be immaterial, and they cannot be replevied by these plaintiffs.

There is much conflict among the decisions of the various courts on the general subject under consideration. But we entertain no doubt that the presses in controversy formed no part of the realty on which they were erected, and are removable by the owners without the consent of this mortgagee. Not simply because they were not permanently physically annexed to the freehold; for the absence of such an incorporation with the soil has long since ceased to be regarded as the crucial test. *Strickland* v. *Parker*, 54 Maine, 263, and cases there cited. Thus a ponderous article, as a wooden cistern, (*Blethen* v. *Towle*, 40 Maine, 310); or a portable hot air furnace, (*Stockwell* v. *Campbell*, 39 Conn., 362,) standing upon the bottom of a cellar, has been held sufficiently affixed by gravitation. It is not the mere fastening that is so much to be regarded, as the nature of the thing, its adaptation to the uses and purposes for which and to which the building is erected or appropriated. *Farrar* v. *Stackpole*, 6 Maine, 154. *Corliss* v. *McLagin*, 29 Maine, 115.

The nature of the presses, the character of the building in which they were placed, no less than the object in view and the

relations subsisting between the parties at the time, all tend to show that it was not the intention to make a permanent accession to the freehold, but a mere temporary attachment for manufacturing purposes. The "long building" was not a factory or mill in which these implements were placed to carry out the obvious purpose for which it was erected, as in *Parsons* v. *Copeland*, 38 Maine, 537. The factory proper, containing the water wheels, steam boiler, machinery, shafting, &c., all which were particularly adapted and essential to the use and enjoyment thereof, and all placed there by the owners of the realty, and all operated by the general motive power, was on the other side of the highway. The presses formed no link in the chain of machinery. To be sure they were heated by steam through the small pipe under the street, connected with the boiler in the factory. This connection being made by a coupling, could be as readily severed as the casting off of a belt. The presses were no more fixtures than the "five grindstones" and "tack machines," in *Pierce* v. *George*, 108 Mass., 78; or the "planing machines," "saws and saw-benches," in *Voorhes* v. *McGinnis*, 48 N. Y., 278; or the "planer and matcher," and the "moulder," in *Rogers* v. *Brokaw*, 25 N. J. Eq., 496; in which last case, (it being between mortgageor and mortgagee,) the chancellor says : "Movable machines, like these, whose number and permanency are contingent on the varying circumstances of business, subject to its fluctuating conditions, and liable to be taken in or out, as exigencies may require, are different in nature and legal character from steam engines, boilers, shafting, &c., designed to be permanent, and indispensable to the enjoyment of the freehold."

The mortgage was not executed by F. C. Pope & Co., but by Isaiah Pope & Co., to secure an indebtment of the latter firm. When executed, the presses being the personal property of Staples & Co., and in nowise fixtures, were not affected by it. If, after they were purchased by F. C. Pope & Co., they had become fixtures, there might have been some necessity of discussing what effect, if any, the mortgage (executed by four of the five members of a firm, although in behalf of another firm having the same per-

sons as members,) might then have. But under the existing facts, we have no occasion to turn our attention to that question.

*Judgment for plaintiffs, and*
$1.00 *damage for detention.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.