GEORGE JACKSON ADS. GEORGE B. TURRELL.

1. A second mortgagee of realty may maintain an action on the case against the mortgagor, or his assigns, for an injury to the security resulting from the removal of fixtures or other waste by the defendant.

2. In such action, the plaintiff need not prove actual knowledge of his mortgage on the part of the defendant: constructive notice, by proper registration, is sufficient. Nor need he prove that the defendant acted fraudulently, or intended to injure him: actual damage, necessarily resulting from the defendant's act, is the legal basis of his suit. Nor is the insolvency of his debtor a material fact.

3. In such an action, the damages recoverable are to be measured by the injury to the mortgage as a security; and if it be doubtful whether the damages should not go to the first mortgagee, the court will exert its equitable powers to control the disposition of the fund so that no injustice may be done.

In case. On rule to show cause.

Argued at November Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff, *T. D. Hodges.*

For the defendant, *I. Van Wagoner.*

The opinion of the court was delivered by

DIXON, J. Byard, being the owner of a plot of land in Paterson, mortgaged it, February 2d, 1871, to the Washington Life Insurance Company, which forthwith duly recorded the mortgage. Afterwards, on February 6th, 1872, he executed a second mortgage thereon to Benson, which was duly registered and then assigned to the plaintiff. Subsequently Byard placed a boiler and engine upon the premises. On October 1st, 1872, he conveyed the property to the Paterson Silk Manufacturing Company, which, on January 16th, 1873, executed to Miller a mortgage upon the realty, and a separate mortgage, securing the same debt, upon the boiler and

engine as chattels. On June 26th, 1874, Miller sold the boiler and engine, under his chattel mortgage, to the defendant, who immediately removed them from the premises. At the time of the sale and removal, the mortgages of the Washington Life Insurance Company and the plaintiff were past due, and the plaintiff had commenced proceedings for foreclosure in chancery, but neither mortgagee had taken possession of the premises. In October, 1874, the plaintiff purchased the property at his foreclosure sale, and entered into possession. Under these circumstances he brought suit in this court, by an action on the case, to recover for the damage done to the realty by the removal of the fixtures. At the circuit, the justice signed the *postea* in his favor, granting the defendant a rule to show cause, upon which the parties have been heard at bar.

Against the plaintiff's claim the defendant urges, first, that the engine and boiler were personal property, and not fixtures in such sense that they became subject to the plaintiff's mortgage. On this point, however, the fact is clearly the other way. The building upon the land was designed for a factory, to be used with steam boiler and engine ; the boiler was bolted to a bed of brick masonry work, several feet into the ground, and this masonry was built up around the boiler to about a level with its top, and was also continued so as to form a furnace and chimney intended for use, and useful only in connection with the boiler. The engine was a stationary engine, and was annexed to brick masonry built into the soil in a similar manner. Neither could be removed without tearing down solid walls and foundations, and when they were removed, the usefulness of the premises, without repair, was substantially destroyed. The boiler and engine were affixed to the realty by the owner of the fee, and no evidence shows a purpose ever to remove them while they continued capable of use. There were, then, the several ingredients by which a chattel becomes real estate : annexation to the freehold, by one who intends to make that annexation perma-

nent, and adaptation to the use of the realty. *Blancke* v. *Rogers*, 11 *C. E. Green* 563.

These fixtures, therefore, became subject to the plaintiff's mortgage. *Crane* v. *Brigham*, 3 *Stockt.* 29 ; *Pierce* v. *George*, 108 *Mass.* 78 ; *Longbottom* v. *Berry*, *L. R.*, 5 *Q. B.* 123.

The defendant further objects that the plaintiff has failed to show that the defendant, at the time of the alleged trespass, had actual knowledge of the existence of the plaintiff's mortgage covering the engine and boiler, and fraudulently removed them, intending thereby to injure the plaintiff. It is true that there is no direct proof of actual knowledge by the defendant of the plaintiff's mortgage. But that mortgage was duly registered, and the defendant claimed the right to remove the boiler and engine by a title derived from the mortgagor after such registration. Under these circumstances the constructive notice which the defendant had, by force of the statutory registration, is equivalent in law to actual notice for all the purposes of this case, and made the rights of the plaintiff paramount to the claim of the defendant. *Plume* v. *Bone*, 1 *Green* 63 ; *Miller* v. *Wack*, *Saxt.* 204 ; *Lee* v. *Woodworth*, 2 *Green's Ch.* 36.

As to the proposition that the defendant must be shown to have fraudulently removed the fixtures, intending to injure the plaintiff, some support is found in the case of *Gardner* v. *Heartt*, 3 *Denio* 232, and other New York cases there referred to, and the court therein seems to be speaking of an actual fraudulent intent. But in the later case of *Van Pelt* v. *McGraw*, 4 *Comst.* 110, a more correct principle is recognized and enforced in this class of actions, to wit, the principle that a man must be deemed to intend the necessary consequences of his voluntary acts. Since, therefore, the defendant voluntarily removed the boiler and engine, if the necessary consequence of that act was an injury to the plaintiff's rights, he must be considered as having designed such injury. But I do not see that any assistance is received by seeking for motives on the part of the defendant which may be termed fraudulent. When a man wilfully does an act, the necessary

consequence of which is the invasion of another's rights, an injury is inflicted for which the law should afford a remedy, and in such cases the motive that really induced the act, as it is not essential to the injury, should be inessential to the remedy, unless some considerations of public policy intervene.

Another ingredient seems also to be present in some of the earlier New York cases, which, the defendant insists, is wanting in the case now in hand, viz., the insolvency of the mortgagor. *Lane* v. *Hitchcock*, 14 *Johns.* 213 ; *Gardner* v. *Heartt, supra.*

But it is not at all consistent with the conventional rights of the plaintiff to require of him proof of this fact in order to maintain his suit. He is not bound to exhaust his personal security before resorting to his real pledge. Moreover, to prove the debtor insolvent may be a very difficult task, and lapse of time may destroy his remedy against the spoiler, before the maturity of his debt enables him to put in operation the only means by which the ability of his bondsman can be tested. It certainly is not just, and cannot be lawful, to leave a mortgagee without redress for the destruction of that substantial security upon the strength of which he loaned his money, because he is unable to show the present insufficiency of that wavering staff, the solvency of his debtor, upon which he never expected to rely. Many cases which maintain the right of the mortgagee to an action against the mortgagor and his assigns, for an injury to the pledge, ignore the insolvency of the debtor as an essential element of the plaintiff's right. *Hitchman* v. *Walton*, 4 *M. & W.* 409 ; *Smith* v. *Goodwin*, 2 *Greenl.* 173 ; *Stowell* v. *Pike*, 2 *Greenl.* 387 ; *Pettingill* v. *Evans*, 5 *N. Hamp.* 54 ; *Page* v. *Robinson*, 10 *Cush.* 99 ; *Cole* v. *Stewart*, 11 *Cush.* 181.

But if this fact be necessary, the testimony proves it. The debtor's father-in-law testifies, that at the time of the removal he was not able to pay his debts as they matured ; that he died soon afterwards ; and that his estate is inadequate to meet the claims against it. He was therefore clearly insol-

vent. *National Bank of the Metropolis* v. *Sprague*, 6 *C. E. Green* 530.

The next objection which the defendant urges is, that as there was a prior unsatisfied mortgage upon the premises, the holder of which had not waived his right to recover of the defendant for the removal of the fixtures, the plaintiff being second mortgagee only, could not maintain an action. The ground upon which a mortgagee, not in possession, may support a suit at law against the mortgagor, or his alienee, for damages resulting from acts injurious to the mortgaged premises, has not been settled in the courts of this state, and the adjudications on that subject, outside of New Jersey, are not in accord, as will be perceived by a reference to the cases already cited. Sometimes the mortgagee has been deemed the legal owner of the fee as against the mortgagor and his assigns, and so entitled to hold them responsible for any act, beyond ordinary use, injurious to the land, to the full extent of that injury; and in *Gooding* v. *Shea*, 103 *Mass.* 360, a third mortgagee was regarded as standing in that position, and having the right to full damages, notwithstanding the fact that the prior mortgagees had superior rights to the same damages, unless the defendant could show that some of those prior mortgagees had appropriated the damages to themselves. See also *Byrom* v. *Chapin*, 113 *Mass.* 308, and *King* v. *Bangs*, 120 *Mass.* 514.

For so broad a claim on behalf of a first mortgagee, technical arguments, deserving of serious consideration, may perhaps be adduced; but, I think, no subsequent mortgagee can establish a like title. The reasons which support the claim of the first mortgagee defeat the claim of every other one, to be regarded as the legal owner of the fee. A second mortgagee is, in law, as in equity, a mere lien-holder, and in that character alone can he enforce any demand for redress.

In the case of *Van Pelt* v. *McGraw*, 4 *Comst.* 110, the right of mortgagees to maintain such suits is declared to rest upon the principle that the mortgage, as a security, has been impaired, and the damages, it is said, are to be limited to the

amount of injury to the mortgage, however great the injury to the land may be. Upon this principle all mortgagees may stand, and it is recommended by the consideration that it gives to each party actually injured a remedy measured by the injury received. It obviates some technical objections, as well as some practical difficulties, which attend the rule first adverted to, and enables the courts of law to do justice by their equitable action on the case. Sometimes the facts disclosed at the trial may be of such a nature as to make it doubtful whether the damages should go to the plaintiff or to an earlier mortgagee; but, in those cases, the defendant is placed in no greater danger than is a defendant in an action upon a policy of insurance, brought by the owner, where the loss is made payable to the mortgagee, and the language of the court in such a case (*Martin* v. *Franklin Fire Insurance Co.*, 9 *Vroom* 140, 145,) indicates a mode in which all interests may be guarded : " The rights of the (earlier) mortgagee can be protected by payment of the money into court, and the insurer (defendant) may obtain indemnity against any subsequent suit by the (earlier) mortgagee, by the action of the court into which the money is paid ; if actions be pending at the same time by the owner and the mortgagee (two mortgagees), the court, under its equitable powers, can so control the litigation that no injustice will be done."

It remains to inquire whether the proof admits of the inference that the plaintiff's security was impaired. At the time of the removal of the boiler and engine, the unpaid taxes on the property amounted to about $2000, and the first mortgage to nearly $20,000. The evidence as to the value of the premises is meagre. At the sheriff's sale, in October, 1874, three months after the injury, no one would bid enough to cover the plaintiff's mortgage of $8000, and the plaintiff bought in the property. He says (and he alone testifies as to its value,) that he then supposed it worth about $25,000, and accordingly, on taking the title, he paid off the taxes and $10,000 of the first mortgage. Under these circumstances, the justice at the circuit, before whom, without a jury, the

cause was tried, had the right to find, as a fact, that both before and after the injury the premises were ample security for the first mortgage, but insufficient to meet, also, the whole of the second mortgage, and that, consequently, the entire depreciation resulting from the defendant's acts, which he assessed at $1880, was so much stripped from the plaintiff's security.

With this finding the court cannot interfere.

The last objection to be noticed is, that the plaintiff was not a mortgagee when the removal took place, because before that time he had obtained a decree for sale in chancery. That objection cannot prevail, for until sale under that decree the plaintiff was as much a lien holder as before, and as a lien-holder does he maintain his suit. His right to have the fund that secured him unimpaired, was not lessened by a decree that the fund should be sold for his payment.

The rule to show cause should be discharged.

BEASLEY, CHIEF JUSTICE. Regarding this as a case in which, from the facts proved at the trial, the inference could be deduced that the defendant had actual knowledge of the rights of the plaintiff, and that he wilfully violated such rights, I concur in the result reached by Justice Dixon.