ANDREW J. CHASE *vs.* GEORGE W. WINGATE.

Piscataquis. Decided May 20, 1878.

*Mortgage. Landlord and tenant. Fixtures, manure.*

</div>

The right of an outgoing mortgagor, after condition broken, to the manure produced upon a farm in the ordinary course of husbandry by him, pending the mortgage and while in possession of the mortgaged premises, is to be determined by the rule of law which prevails between mortgagor and mortgagee, and not that which prevails between landlord and tenant.

The general rule, that manure made upon a farm in the usual course of husbandry is so attached to and connected with the realty that, in the absence of any agreement or stipulation to the contrary, it passes as appurtenant to it, is applicable to a mortgagor in possession. He has no right when vacating the premises to remove or sell such manure, but the title thereto is vested in the mortgagee as the owner of the freehold.

When Carter sold and delivered the manure in controversy to the defendant, he was an outgoing mortgagor, after condition broken. *Held*, that he had no title to the manure, and the defendant acquired no right to it by his purchase, and was liable to the mortgagee, the plaintiff, for its fair market value at the time of the taking.

ON REPORT.

TROVER, for ten cords of manure, valued at $40. Plea, general issue. The defendant claimed title by purchase from one Carter, the mortgagor in possession of the farm, of which the plaintiff was mortgagee, and on which the manure was made.

The plaintiff had obtained a judgment as on mortgage against Carter and, in due course, a writ of possession which he placed in the sheriff's hands for service. The evidence tended to show that, on Carter's solicitation, the plaintiff allowed him to remain a while, and at a time agreed Carter left; that, in the night before leaving, according to previous arrangement with the defendant, he hauled the manure with the defendant's team from the mortgaged land on to the land of the defendant, and received from him pay therefor, both Carter and the defendant knowing that the plaintiff claimed to own it, as mortgagee, and had forbidden its removal.

*A. M. Robinson & W. P. Young*, for the plaintiff.

*A. G. Lebroke*, for the defendant, contended that the permission by the plaintiff for Carter to remain constituted the relation of landlord and tenant, and that Carter was his tenant at will, and the manure was liable to be seized on execution and sold for the payment of Carter's debts. *Staples* v. *Emery*, 7 Maine, 201. And that of course he would have a right to sell it. The case of *Lassell* v. *Reed*, 6 Maine, 222, deciding that the outgoing tenant had no right to remove the manure after the tenancy had terminated, was not adverse to his right to sell before the termination of the tenancy. But even that case was placed upon doubtful grounds of public policy for the encouragement of agriculture; for manure was sure to be used, and it did not concern the public which of two adjoining farms it should enrich.

Dickerson, J. The chief question to be determined in this case arises out of the relations of the plaintiff, as mortgagee, and the defendant's vendor, Jonathan Carter, as mortgagor of the farm upon which the manure in controversy was produced. When Carter sold and delivered the manure to the defendant he was an outgoing mortgagor, after condition broken. The case has been somewhat complicated, from the fact that it has been presented as depending mainly upon the law of landlord and tenant, instead of the law applicable to mortgagor and mortgagee.

The case, however, in its facts, belongs to the latter class, and is clearly distinguishable from the former in respect to the law

involved in the question under consideration. At common law, whatever is fixed to the freehold becomes a part of the realty and passes with it. This rule has been relaxed in favor of tenants and others who have made erections and improvements at their own expense and for their own use, upon land in which they had only a temporary interest, because of the hardship they would be subjected to if they could not remove such fixtures at or before the expiration of their term. But this reason does not apply in the case of mortgagors. The mortgagor, for most purposes, is regarded as the owner of the estate, and the improvements made by him while in possession of the mortgaged premises, in contemplation of law, are deemed to be made for himself and to enhance the general value of the estate, and not for its temporary enjoyment. Besides, the mortgagor pays no rent or equivalent for the use and enjoyment of the mortgaged premises, is not compelled to surrender the estate at a fixed period of time, as in case of a lease, and can, by fulfilling his contract of purchase, become the owner of the estate, and enjoy the benefit of all his erections and improvements. Hence, the rule of the common law applicable to actual fixtures has been held to apply to erections and improvements made by the mortgagor in possession without relaxation, and also to articles of a doubtful nature, whether actual fixtures or not, on the ground of the presumed intention of the parties in respect to them. *Winslow* v. *Merchants' Ins. Co.*, 4 Met. 306, 310, 313. *Butler* v. *Page*, 7 Met. 40, 42. *King* v. *Johnson*, 7 Gray, 239, 241.

It was expressly held in *Lynde* v. *Rowe*, 12 Allen, 100, that if fixtures are added by a tenant at will of the mortgagor, his right to remove them must be determined by the rule which prevails as between mortgagor and mortgagee, and not that which prevails as between landlord and tenant.

In general, manure, made in course of husbandry upon a farm, is so attached to and connected with the realty, that, in the absence of any express stipulation or understanding to the contrary, it passes as appurtenant to it. This principle has been applied in the case of manure taken from the barnyard of a homestead and piled upon the land, though not broken up, nor rotten, nor in a

fit state for incorporation with the soil. *Fay* v. *Muzzey,* 13 Gray, 53, 55. The same rule has been held applicable in cases between landlord and tenant. *Lassell* v. *Reed,* 6 Maine, 222, and *Daniels* v. *Pond,* 21 Pick. 367; and also between vendor and vendee. *Kittredge* v. *Woods,* 3 N. H. 503. This doctrine rests upon the ground that it is for the interest of good husbandry, and the encouragement of agriculture, that manure produced on a farm, in the common course of husbandry, should be consumed upon it, and that the farm should not be impoverished by the removal therefrom of the material necessary for its enrichment and the growth of the succeeding crops.

The manure in controversy was produced in the ordinary course of husbandry by the mortgagor, while in possession of the mortgaged premises. In the absence of any agreement or stipulation to the contrary, that manure constituted a part of the realty, whether it is to be regarded in the nature of a fixture or as appurtenant to the freehold; by fulfilling the conditions of the mortgage, the defendant's vendor might have enjoyed the full benefit of this product of his husbandry in the future crops, but by neglecting so to do, and selling it, he forfeited this right and committed a tort upon the plaintiff. The defendant acquired no title to the property by the sale from Carter, but thereby incurred the liability to compensate the plaintiff for its value.

The measure of damages is the fair market value of the manure at the time of the taking, including what would be equivalent to interest on that amount from the date of the writ. Although the evidence is somewhat vague and unsatisfactory upon this point, we think that it warrants the conclusion that there were seven cords of the manure, worth three dollars a cord. If to this estimate there is added the usual allowance for withholding payment from the plaintiff from date of the writ, we have the sum of $22.68, for the amount of damages to be paid by the defendant.

*Judgment for plaintiff for twenty-two dollars and sixty-eight cents.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and LIBBEY, JJ., concurred.